#### IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| LAWRENCE F. FELDMAN AND ROBYN FELDMAN | : |
| DEBTOR(S) | : BANKRUPTCY NO. 13-11302 |
| AMERICAN ASSET FINANCE, LLC | : |
| PLAINTIFF(S) VS. | : |
| LAWRENCE F. FELDMAN | : |
| DEFENDANT(S) | : ADVS NO. 13-0287 |

## OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

American Asset Finance LLC (American) has filed suit against Lawrence F. Feldman (the Debtor) to except its claim from discharge as well as to deny the Debtor a discharge altogether. The Debtor has filed a motion to dismiss the Complaint. A hearing on the matter was held on September 25, 2013. The Court thereafter took the matter under advisement. For the reasons which follow, the Motion will be granted and the Complaint will be dismissed without prejudice.[1]

---

[1] Because this matter involves a request to determine dischargeability and to deny a discharge, it is within this Court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(I) and (J) (including among core proceedings both causes of action)

*Counts*

The Complaint pleads four counts. Three of the counts seek a declaration of non-dischargeability as to Plaintiff's claim. Count I seeks non-dischargeability based on actual fraud. *See* 11 U.S.C. § 523(a)(2)(A). Count II seeks non-dischargeability based on a writing. *See* 11 U.S.C. § 523(a)(2)(B). Count III seeks the same relief based on fiduciary fraud. *See* 11 U.S.C. § 523(a)(4). The fourth count objects to the granting of discharge based on alleged failure to retain records. *See* 11 U.S.C. § 727(a)(3).

*Grounds for Dismissal*

The Debtor seeks dismissal of the complaint based on two rules. First, he maintains that none of the four counts states a claim upon which relief may be granted. See F.R.C.P. 12(b)(6).[2] In the alternative, he argues that the complaint fails to join an indispensable party and so must be dismissed under F.R.C.P. 7019.[3]

*Pleading Standard*

To state a claim under Rule 8[4] of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550

---

[2] Made applicable by B.R. 7012(b).
[3] Made applicable by B.R. 7019.
[4] Made applicable to adversary proceedings by B.R. 7008(a).

2

U.S. at 570). Pleading fraud requires the complaint to include specificity as to the "circumstances constituting fraud" such as the "who, what, when, where, and how." *In re Dulgerian*, 388 B.R. 142, 147 (Bankr.E.D.Pa.2008) (citing *In re Rockefeller Center Properties, Inc. Sec.Litig.*, 311 F.3d 198, 217 (3d Cir.2002)).

*Allegations*

The Debtor is an attorney who represented plaintiffs in class action lawsuits. *See* Motion to Dismiss, 1. In July 2007, he entered into an agreement with the Plaintiff (the 2007 Agreement). Complaint, ¶ 11. Under the agreement, Debtor assigned his interest in legal fees due him from certain class action cases (fen-phen litigation). *Id.* In August 2008 Debtor received a fee award of $1.2 million. *Id.* ¶ 12. Under the 2007 Agreement, Debtor owed the Plaintiff $800,000 from that amount. *Id.* ¶ 13. Notwithstanding, Debtor paid the Plaintiff only $700,000. *Id.* Debtor has allegedly never paid the Plaintiff all amounts due under the 2007 Agreement. *Id.* ¶ 15.

In June 2009, the parties resolved their dispute over the 2007 Agreement by entering into a second agreement (the 2009 Agreement). *Id.* ¶ 16. As part of the 2009 Agreement, the Debtor assigned to Plaintiff his interest in legal fees in two other class actions (the iPod Nano and Vioxx cases). *Id.* ¶ 17. When the Debtor received his fee in both cases, he failed to turn over those fees to the Plaintiff. *Id.* ¶ 19. At the present time, Debtor allegedly owes Plaintiff $427,000 plus a penalty of $18,000. *Id.* ¶ 20. It is these amounts for which Plaintiff seeks a declaration of non-dischargeability.

*Count I – False Pretenses*

The first count is based on § 523(a)(2) which provides that a debtor will not receive a discharge of any debt: "for money, property, services, or an extension,

renewal, or refinancing of credit, to the extent obtained by—*false pretenses*, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A) (emphasis added). To successfully challenge the dischargeability of debt under § 523(a)(2)(A) a creditor must establish that: (1) the debtor made the representations knowing they were false; (2) the debtor made the representations with the intent and purpose of deceiving the plaintiff; (3) the creditor justifiably relied on the debtor's false representations; and (4) the creditor suffered a loss or damage as a proximate consequence of the representation having been made. *See, e.g., In re Maurer*, 112 B.R. 710, 712–13 (Bankr.E.D.Pa.1990). In general, this test applies for all three grounds listed in § 523(a)(2)(A) even though the elements for each vary slightly. *In re Vepuri*, 2009 WL 2921305, at * 10 n. 7 (Bkrtcy.E.D.Pa. Mar. 25, 2009)Plaintiff contends that the Debtor acted under false pretenses when it induced the Plaintiff to enter in to the 2009 Agreement.

    A "false pretense" is an "implied misrepresentation or conduct which creates and fosters a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *In re Antonious*, 358 B.R. 172, 182 (Bkrtcy.E.D.Pa. 2006) (quoting *In re Haining*, 119 B.R. 460, 463–464 (Bankr.D.Del.1990)). A "false pretense" may be "any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongly induced to extend money or property to the debtor. A false pretense must be "fostered 'willfully, knowingly, and by design; it is not the result of inadvertence.'" *In re Antonious*, 358 B.R. at 182. As false pretenses is a species of fraud, (*see In re Ricker*, 475 B.R. 445, 456 (Bkrtcy.E.D.Pa. 2012)), the heightened pleading requirement applicable to fraud claims

4

applies equally.

The Plaintiff alleges that the Debtor fraudulently induced the Plaintiff into signing the second agreement. *Id.* ¶ 24. It next explained that before he signed the 2009 Agreement, the Defendant owed money to Plaintiff under the first agreement. *Id.* ¶ 25. In order to avoid the consequences of that default, Defendant is alleged to have induced Plaintiff to waive its remedies and sign the second agreement. *Id.* ¶ 26. This was done without the intent to perform under the second and so, concludes Plaintiff, the promise to pay under the 2009 agreement was given under false pretenses. *Id.* ¶¶ 27-28.

In reviewing Count II, the Court fails to see a pretense alleged. Plaintiff would have the Court infer that the second agreement was a false pretense because Defendant never intended to comply with agreement. Yet what is required is a representation which Defendant knew to be untrue when he made it. The only affirmative acts attributed to the Defendant is that he "fraudulently induced" Plaintiff to execute the 2009 contract or to waive certain rights under the 2007 contract. *Id.* ¶¶ 24, 26. These are legal conclusions. Neither does it help to allege that Defendant lacked the intent to perform under the second agreement. There are simply no allegations of a specific representation—express or implied—on Defendant's part. Without that, there cannot be reliance on the Plaintiff's part. Accordingly, the Court finds that Count I fails to state a claim upon which relief can be granted. This count will be dismissed without prejudice.

*Count II – Fraud Based*
*On a Writing*

Next the Court turns to whether Count II states a cause of action under § 523(a)(2)(B). This section excepts from discharge a debt obtained by "use of a

statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B); *In re Cohn*, 54 F.3d 1108, 1114 (3d Cir.1995) (listing the five elements).

The Court finds that four of the five elements are sufficiently plead. The Debtor is alleged to have used a writing (the 2009 Agreement) to obtain the fee advance (¶ 32). The writing contained a material, false statement (¶¶ 33-34). The Plaintiff reasonably relied on that statement when extending credit to Debtor (¶¶ 47-48). Finally, the Debtor intended to deceive the Plaintiff when he made that statement (¶ 44). What remains to be determined is whether it has been alleged that the material misrepresentation pertains to a specific type of information.

*Respecting the Debtor's*
*Financial Condition*

Section 523(a)(2)(B) does not cover every material statement of fact made in writing to a creditor to induce agreement. It is confined in its application to statements about the financial condition of the debtor (or of an insider). 4 *Collier on Bankruptcy* ¶ 523.08[2][c] (16th ed.). As to what is meant by "respecting the debtor's … financial condition," neither the phrase "respecting the debtor's... financial condition" nor the term "financial condition" is defined in the Bankruptcy Code. The Third Circuit has not yet had occasion to clarify what either means. Elsewhere, courts are divided on the proper scope of the phrase. The majority view holds that the term "financial condition" refers only to the debtor's overall financial condition, such as the debtor's solvency or net worth. *See In re Joelson*, 427 F.3d 700, 709 (10th Cir. 2005); *In re Chivers*, 275 B.R.

6

606, 615 (Bkrtcy.D.Utah 2002); *In re May*, 368 B.R. 85 (6th Cir. BAP 2007); *In re Lauer*, 371 F.3d 406, 413 (8th Cir. 2004); *In re Belice*, 461 B.R. 564, 578 (9th Cir BAP 2011); *In re Bandi*, 2010 WL 2801881, at *3 (Bkrtcy E.D.La. July 14, 2010); *In re Lopez*, 2011 WL 4479763, at *8 (Bkrtcy.E.D.Cal Sept. 26, 2011); *In re Banayan*, 468 B.R. 542, 576 (Bkrtcy. N.D.N.Y. 2012); *In re Campbell*, 448 B.R. 876, 886 (Bkrtcy.W.D.Pa. 2011); *In re Husman*, 2013 WL 5134539, at **4-5 (Bkrtcy.W.D.Pa. Sept.13, 2013). Other courts, relying on the statutory text, i.e., the use of the broader term "financial condition," rather than "financial statement," and drawing the conclusion that factual representations regarding ownership of an asset or the existence or nonexistence of an encumbrance on an asset "go to the very heart of a [debtor's or insider's] financial condition" have held that the term "financial condition" has a broader scope. *See In re Van Steinburg*, 744 F.2d 1060, 1061 (4th Cir. 1984); *In re Jacobs*, 460 B.R. 149, 155 (Bkrtcy.E.D.Mich. 2011); *In re Ortiz*, 441 B.R. 73, 83 (Bkrtcy.W.D.Tex. 2010); *In re Kleiman*, 2007 WL 1480716, at *4 (Bkrtcy.D.N.J. May 18, 2007). Finally, there is a third interpretation known as the "modified expansive view" which emphasizes (a) whether the statement in issue constitutes "information that a potential lender or investor would generally consider before investing" and (b) the "intended purpose of such statement." *See In re Redburn*, 202 B.R. 917, 927 (Bkrtcy.W.D.Mich.1996); *In re Boice*, 149 B.R. 40, 46 (Bkrtcy.S.D.N.Y. 1992)

    Noting that the trend is toward the strict reading of the phrase "a statement respecting the debtor's … financial condition," this Court will follow the majority position. Influential in this regard is the Tenth Circuit's thorough analysis of the question. *See In re Joelson*, 427 F.3d 700 (10th Cir. 2005). In divining the meaning of the phrase

7

"respecting the debtor's … financial condition," the Tenth Circuit observed how the Supreme Court, in another context, "freely substituted the phrases "statement of financial condition" and "financial statement" for the phrase "statement respecting the debtor's … financial condition." 427 F.3d at 710 quoting *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437 (1995) (interpreting §523(a)(2)(A)). The Tenth Circuit went on to note that "statement of financial condition" and "financial statement" are terms with established meanings that involve an individual's or entity's overall financial health. *Joelson, id*. Elsewhere, the Tenth Circuit observed that

> The emerging viewpoint follows a strict interpretation. Although it does not require any specific formality, the strict interpretation limits an actionable statement of financial condition to financial-type statements including balance sheets, income statements, statements of changes in financial position, or income and debt statements that provide what may be described as the debtor or insider's net worth, overall financial health, or equation of assets and liabilities. Cases supporting this view generally recite four arguments. First, they argue that the normal commercial meaning and usage of " 'statement' in connection with 'financial condition' denotes either a representation of a person's [an entity's] overall 'net worth' or a person's [an entity's] overall ability to generate income." Second, they cite to legislative history that references the statutes' application to the " 'so-called false financial statement.' " Third, they argue that the strict interpretation promotes better bankruptcy policy, because narrowing the definition of financial condition in § 523(a)(2)(B) necessarily expands those statements, both written and oral, that do not relate to financial condition that fall within § 523(a)(2)(A) and better harmonizes the statute. Finally, they argue that a strict interpretation is consistent with the historical basis of § 523(a)(2)(B), which was designed to protect debtors from abusive lending practices.

*Joelson*, 427 F.3d at 711-712 quoting *In re Chivers, supra*, 275 B.R. at 615. The *Chivers* Court, in turn, would adopt the strict interpretation based largely on the

8

Supreme Court's statement in *Field v. Mans, supra*:

> [T]he strongest argument in favor of the broad interpretation—that had Congress wanted § 523(a)(2)(B) limited to false financial statements, it would have so drafted the statute—is gutted by the Supreme Court's repeated statements in *Field v. Mans* that § 523(a)(2)(B) refers to false financial statements. While it might be convenient to dismiss *Field's* repeated references to false financial statements as *dicta, Field's* meticulous comparison of §§ 523(a)(2)(A) and (B) does not lend itself to that interpretation. Rather, it makes it more difficult to dismiss as unintentional the recharacterization of "a statement in writing ... respecting ... financial condition" as a false financial statement. Lastly, *Field's* recitation of the history of § 523(a)(2)(B) and its goal of preventing abuse by consumer finance companies, which sometimes have encouraged false financial statements by their borrowers for the purpose of insulating their own claims from discharge, lends strong support for adoption of the strict interpretation.
>
> Therefore, the better approach is the strict interpretation of § 523(a)(2)(B) that requires a false written statement to describe the debtor's net worth, overall financial health, or ability to generate income. It is the most consistent with the Supreme Court's interpretation of the statute, it is consistent with the history of the reason for the creation of the statute, it strictly construes § 523(a)(2)(B) against the creditor and liberally in favor of the debtor, and it ... reconciles §§ 523(a)(2)(A) and (B) without impairing their effectiveness.

*Joelson*, 427 F.3d at 712 *quoting Chivers, supra*, 275 B.R. at 615-616. Based on that authority, the Tenth Circuit held that:

> such false statements are those that purport to present a picture of the debtor's overall financial health. Statements that present a picture of a debtor's overall financial health include those analogous to balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities. However, such statements need not carry the formality of a balance sheet, income statement, statement of changes in financial position, or income and debt statement. What is important is not the

9

> formality of the statement, but the information contained
> within it—information as to the debtor's or insider's overall
> net worth or overall income flow.

427 F.3d at 714. This Court is guided accordingly.

Count II is based on numerous written warranties and representations which are alleged to be false. ¶¶ 32, 39-42. Specifically, the representations pertain to an expectation of a fee award in two class action cases. While that expectation constitutes an account receivable which, in turn, is an asset of the Debtor, it is by no means the sole asset of the estate. That incompleteness means that the alleged representation does not reflect the Debtor's overall financial worth. For that reason, the representation is not of the type necessary to state a claim under § 523(a)(2)(B). Count II will therefore also be dismissed without prejudice.

*Count III – Fiduciary Fraud*

Count III seeks a declaration of non-dischargeability based on fiduciary fraud. Pursuant to § 523(a)(4), a debt "for fraud or defalcation while acting in a fiduciary capacity" is excepted from discharge. 11 U.S.C. § 523(a)(4). It is alleged that the debtor was in a fiduciary relationship with the Plaintiff. Complaint ¶ 53-54. It is further alleged that the Debtor breached that duty by failing to turn over the legal fees which he had assigned to the Plaintiff. *Id.* ¶ 56. In the alternative, Plaintiff alleges that the question has already been adjudicated in a prior state court ruling. *Id.* ¶ 58. There, the state court found Debtor liable for conversion and defalcation. *Id.* That finding, concludes Plaintiff, has preclusive effect here. *Id.* ¶ 59.

*Pleading a § 523(a)(4) Claim*

The Third Circuit has not ruled on the meaning of the phrase "fiduciary capacity"

10

in terms of § 523(a)(4); however many courts have, including other Courts of Appeal. The concept of a "fiduciary" has been narrowly construed under § 523(a)(4). *See In re Ishmael*, 2008 WL 80040, at *4 (Bkrtcy.E.D.Pa. Jan. 7, 2008) (citing cases). A debtor may be a fiduciary under state law "while not qualifying as such for purposes of § 523(a)(4)." *Ginsburg v. Birenbaum (In re Birenbaum),* 2006 WL 1997478, at *7 (Bankr.W.D.Pa. July 7, 2006). Federal law governs the meaning of the phrase "fiduciary capacity" for purposes of § 523(a)(4), but state law is used to determine whether trust obligations exist. *Ishmael*, *supra*, at *5.

The concept of fiduciary for purposes of § 523(a)(4) has generally been held to apply only in situations in which an express or technical trust exists. *Id.* at *4. "The fiduciary (the debtor) must hold an express or technical trust on behalf of the beneficiary (the creditor)." *International Fidelity Insurance Company v. Marques (In re Marques),* 358 B.R. 188, 194 (Bankr.E.D.Pa.2006). "The required trust must have existed prior to or independent of the particular transaction from which the debt arose." *Ishmael, supra*, at *4 citing *Pennsylvania Lawyers Fund for Client Security v. Baillie (In re Baillie),* 368 B.R. 458, 469 (Bankr.W.D.Pa.2007). *See also Marques, supra,* 358 B.R. at 194 ("The fiduciary relationship must have existed prior to or independent of the particular transaction from which the debt arose.")

Here there is no allegation of an express or technical trust. The sole allegation approaching a trust arrangement is a contract provision whereat the Debtor acknowledges himself to be a fiduciary under the parties' arrangement. *See* ¶¶ 53, 54. That is insufficient for pleading the status of fiduciary for purposes of non-

dischargeability. Accordingly, the Court holds that Plaintiff has not stated a claim for fiduciary fraud under § 523(a)(4).

*Preclusion and Non-Dischargeability*

Alternatively, the Plaintiff contends that the state court judgment precludes the Debtor from discharging the debt under § 523(a)(4). "In general, the entry of a prepetition state court judgment does not render that judgment nondischargeable by virtue of claim preclusion ( *i.e.,* res judicata)." *In re Saler*, 205 B.R. 737, 742 (Bkrtcy.E.D.Pa. 1997). At the time of entry of the state court judgment, the issue of nondischargeability is not raised; moreover, such an issue may be within the exclusive jurisdiction of a bankruptcy court. *Id.*; *see also* 11 U.S.C. § 523(c)(1) (requiring creditors who seek nondischargeability under § 523(a)(2), (4) or (6) to proceed in bankruptcy court); and *see also* 4 *Collier on Bankruptcy* ¶ 523.03 ("Thus, the bankruptcy court has exclusive jurisdiction of most dischargeability determinations under subsections 523(a)(2), (4) and (6)"). Therefore, claim preclusion is not appropriate. *See, e.g., Brown v. Felsen*, 442 U.S. 127, 134, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (refusing to accord res judicata effect to state court ruling to bar creditor from offering additional evidence in support of nondischargeability fraud and conversion claims based on statutory policy of resolving nondischargeability questions in bankruptcy court).   Count III will thus be dismissed without prejudice.

*Count IV - Objection to Discharge*

Count IV objects to the Debtor's discharge in its entirety. Section 727(a)(3) provides that the court shall grant the debtor a discharge, unless

> the debtor has concealed, destroyed, mutilated, falsified, or

> failed to keep or preserve any recorded information,
> including books, documents, records, and papers, from
> which the debtor's financial condition or business transaction
> might be ascertained, unless such act or failure to act was
> justified under all of the circumstances.

11 U.S.C. § 727(a)(3). "The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *In re Ritter*, 404 B.R. 811, 832 (Bkrtcy.E.D.Pa. 2009) quoting *Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir.1992). "The test is whether there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained." *Id.*

To state a prima facie case under § 727(a)(3) a party objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records and (2) this failure to maintain makes it impossible to ascertain the debtor's financial condition and material business transactions. *Id.* citing *Meridian Bank*, 958 F.2d at 1232. The objecting party must make an initial showing that the debtor's records are inadequate. *Id.*

The Complaint alleges that Debtor has failed to preserve records relating to the iPod and Vioxx litigations and that given his fiduciary duty to Plaintiff to keep such records, he should be denied a discharge. ¶¶ 64-66. Yet even assuming a failure to keep those litigation records, it is not alleged how creditors are prejudiced as a result. In other words, it is not alleged that the Debtor's failure to retain (or the destruction of) these particular case files makes it impossible to obtain a true picture of the Debtor's

13

financial affairs. Drawing that conclusion arguably requires reliance on different, broader, financial information. Accordingly, this count will be dismissed, again without prejudice.

*Joinder of Party*

Debtor's final challenge is based on Rule 7019 which makes applicable F.R.C.P. 19. That rule provides, in pertinent part:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) *leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.*

F.R.C.P. 19(a) (emphasis added). Debtor explains that another creditor (CFS) also claims an interest in the same receivables in which Plaintiff alleges an interest. Unless that other creditor is joined as a party, argues Debtor, there is the risk that Debtor will incur liability as to both for the same funds.

The Court rejects this argument. It reflects a misunderstanding of the nature of the relief that may be afforded in this adversary proceeding. If the Plaintiff in this case were successful, it would not obtain a monetary recovery. Rather, the most it can obtain

14

is declaratory relief: i.e., a declaration that the debt owed to the Plaintiff, such as it may be, is not discharged in this bankruptcy. This does not create risk of the Debtor having to pay twice. *See In re Carl F. Semrau, DDS, Ltd.*, 2005 WL 3242332, at *5 (Bkrtcy.N.D.Ill. Dec. 1, 2005) (observing that issue in dischargeability litigation is unrelated to issue of liability of unpaid balance). For that reason, joinder is not necessary.

*Summary*

The Debtor's Complaint to Determine Dischargeability is dismissed. The Debtor, however, is given leave to file an amended complaint within 20 days of the date of entry of this order which is consistent with this Opinion.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated: November 6, 2013