**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| LAWRENCE F. FELDMAN AND ROBYN FELDMAN | : |
| DEBTOR(S) | : BANKRUPTCY NO. 13-11302 |
| AMERICAN ASSET FINANCE, LLC | : |
| PLAINTIFF(S) | : |
| VS. | : |
| LAWRENCE F. FELDMAN | : |
| DEFENDANT(S) | : ADVS NO. 13-0287 |

## OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

American Asset Finance LLC (American) has filed an amended complaint against the Debtor to except its claim from discharge. The Debtor has filed a motion to dismiss the Complaint. A hearing on the matter was held on January 29, 2014. The Court thereafter took the matter under advisement. For the reasons which follow, the Motion will be denied.[1]

*Background*

The original complaint plead four counts, three of which sought determinations of nondischargeability. On November 6, 2013 the Court granted the Debtor's motion to

---

[1] Because this matter involves a request to determine dischargeability, it is within this Court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(I)(including among core proceedings both causes of action)

dismiss all counts without prejudice. The Plaintiff has filed an Amended Complaint which now pleads two counts which seek a determination of nondischargeability on alternate grounds. The first count alleges that the claim is the result of the Debtor's fraud and is therefore not dischargeable pursuant to § 523(a)(2)(A). The second count alleges that the claim resulted from willful and malicious injury by the Debtor and is, therefore, not dischargeable pursuant to § 523)(a)(2)(6).

*Grounds for Dismissal*

The Debtor seeks dismissal of both counts. As to the first, he maintains that it is based on an incomplete reading of the facts and that it otherwise fails to state a claim upon which relief may be granted. As to the second, he maintains that it is untimely and that it likewise fails to state a claim upon which relief may be granted.

*Documents Which the
Court May Consider*

The first of the Debtor's challenges as to Count I concerns not so much what is plead, but what the Plaintiff is supposed to have left out. As the Debtor reads the amended complaint, the Plaintiff bases its fraud claim on certain provisions in the parties' agreement while ignoring others which would disprove fraud. In other words, Debtor maintains that the amended complaint fails to allege all of the relevant provisions in the parties' agreement.

As a general proposition, the Debtor is correct that the entire contract may be considered in this context. The applicable rule of procedure provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleadings for all purposes." F.R.C.P. 10(c) (made applicable by B.R. 7010). The rule's use of the term

2

"instrument" contemplates that contracts, notes and other writing on which a parties' action or defense is based may be considered on a motion to dismiss. *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989) citing 5A Wright & Miller, *Fed. Prac & Proc. Civ.* § 1327 (3d ed.); *see also Bidlingmeyer v. Broadspire*, 2011 WL 4470983, at *1 n.1. (E.D.Pa., Sept. 27, 2011) (explaining that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

The Court will consider the operative documents referenced in the Amended Complaint and which the Plaintiff *intended* to attached as Exhibits. The Court uses the word "intended" because it appears that the Plaintiff failed to upload the exhibits when it electronically filed its Amended Complaint. Notwithstanding, the two purported exhibits on which both parties rely to make their respective cases, the 2007 and 2009 Agreements, were attached to the original complaint. The Court concludes that the two agreements attached to the original complaint are the same two agreements which Plaintiff intended to attached to the amended complaint. Thus, relying on those documents in making a ruling on the motion would pose no prejudice. See *Roucchio v. Coughlin*, 923 F.Supp. 360, 366 (E.D.N.Y. 1996) (holding that where plaintiff forgot to attach exhibits to present proceeding which were attached in prior proceeding involving same parties, exhibits may be considered in present proceeding).

*Pleading Standard*

Having determined what may be considered, the Court turns to what must be alleged. To state a claim under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the

3

pleader is entitled to relief." F.R.C.P. 8(a)(2) (made applicable by B.R. 7008(a)). However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). Where fraud is alleged, the rules require the complaint to include specificity as to the "circumstances constituting fraud" such as the "who, what, when, where, and how." *In re Dulgerian*, 388 B.R. 142, 147 (Bankr.E.D.Pa.2008) (citing *In re Rockefeller Center Properties, Inc. Sec.Litig.*, 311 F.3d 198, 217 (3d Cir.2002)).

*Allegations*

The Debtor is an attorney who represented plaintiffs in class action lawsuits. *See* Amended Complaint, ¶ 15. In July 2007, he entered into an agreement with the Plaintiff (the 2007 Agreement). *Id.* Under the agreement, Debtor assigned his interest in legal fees due him from certain class action cases. *Id.* In August 2008 Debtor received a fee award of $1.15 million. *Id.* ¶ 16. Under the 2007 Agreement, Debtor owed the Plaintiff $815,000 from that amount. *Id.* ¶ 18. Notwithstanding, Debtor paid the Plaintiff only $700,000. *Id.* ¶ 19. Debtor has never paid the Plaintiff all amounts due under the 2007 Agreement. *Id.* ¶ 18.

In November 2008, the Plaintiff's principals met with the Debtor to discuss his alleged breach. ¶ 25 At that meeting the Debtor is alleged to have represented that he expected future fee awards of close to $1 million. ¶ 27. In December 2008, the Debtor

4

provided the Plaintiff with information regarding those expected fees.  ¶ 31  Based on this information the Plaintiff agreed to reduce the amount that the Debtor owed from the 2007 Agreement and to advance him another $50,000 to pay off an IRS lien. ¶ 32 In exchange for that consideration, the Debtor promised to pay Plaintiff $196,000 out of the future fee awards.  ¶ 38  These terms were incorporated into what is referred to as the June 2009 agreement.  ¶ 35

At the time of that agreement, the Plaintiff was aware that CFS, another factor, had a pending lawsuit against the Debtor.  ¶ 39.  As to CFS, the Debtor is alleged to have made two representations: first, that CFS's claim against him was meritless; and second, that even if it were not, the total of the future fee award was sufficient to pay both CFS and the Plaintiff.  ¶¶ 40-41.  In November 2009, the Debtor wrote to the Plaintiff informing it that he had made a settlement offer to CFS that included a payoff of what he owed.  ¶ 42  Debtor also orally assured Plaintiff that he would not settle with CFS without paying Plaintiff in full.  ¶ 43

When Debtor received subsequent fee awards in two cases totaling $250,000 he settled with CFS and was left with a remainder of $163,000.  ¶¶ 44-45  Instead of paying that remainder over to Plaintiff as agreed, the Debtor kept the money.  ¶ 46  In June 2010 Debtor emailed the Plaintiff admitting the he spent that money on himself.  ¶ 47  In October 2012, Plaintiff obtained a judgment against the Debtor in the Superior Court of New Jersey in the amount of $407,000.  ¶¶ 8-9.

*Legal Sufficiency of
The Fraud Count*

Section 523 of the Bankruptcy Code provides that a debtor will not receive a discharge of any debt: "for money, property, services, or an extension, renewal, or

refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A) (emphasis added).  To successfully challenge the dischargeability of debt under § 523(a)(2)(A) the creditor must establish that: (1) the debtor made the representations knowing they were false; (2) the debtor made the representations with the intent and purpose of deceiving the plaintiff; (3) the creditor justifiably relied on the debtor's false representations; and (4) the creditor suffered a loss or damage as a proximate consequence of the representation having been made. *In re Vepuri*, 2009 WL 2921305, at *10 (Bkrtcy.E.D.Pa. Mar. 25, 2009).  In general, this test applies for all three grounds listed in § 523(a)(2)(A) even though the elements for each vary slightly.  *Id.* at *10 n. 7.  The Amended Complaint alleges that the Debtor both acted under false pretenses and made false representations when he induced the Plaintiff to enter into the 2009 Agreement.  Amended Complaint, ¶¶ 53-72.

*Fraudulent Conduct*

The body of the fraud count begins by charging the Debtor with acting under false pretenses.  A "false pretense" is an "implied misrepresentation or conduct which creates and fosters a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *In re Antonious*, 358 B.R. 172, 182 (Bkrtcy.E.D.Pa. 2006) (quoting *In re Haining*, 119 B.R. 460, 463–464 (Bankr.D.Del.1990)).  A "false pretense" may be "any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongly induced to extend money or property to the debtor. A false pretense must be "fostered 'willfully, knowingly, and by design; it is not the result of

6

inadvertence.'" *In re Antonious*, 358 B.R. at 182.  As false pretenses is a species of fraud, (*see In re Ricker*, 475 B.R. 445, 456 (Bkrtcy.E.D.Pa. 2012)), the heightened pleading requirement applicable to fraud claims applies equally.

In specific, the Plaintiff alleges that it refrained from exercising its rights when the Debtor breached their first agreement as a result of Debtor's false pretenses.  ¶ 58.  As with the original complaint, the Court fails to see where a *pretense* is alleged.  To reiterate, a false pretense is a set of circumstances which lead the plaintiff to a mistaken belief.  But that is not what is alleged here.  Far from being implicit, the Debtor's conduct here is quite *explicit*.  The amendment to the complaint charges him with making misrepresentations in order to get the Plaintiff to sign the 2009 agreement.  For example, the Debtor is alleged to have represented that "he would not settle with CFS without providing for payment in full to AAF."  ¶ 65.  He is further alleged to have represented that he "[would] take all steps necessary to ensure that Plaintiff received its portion of the fee awards."  ¶ 72.  He is alleged to have assured Plaintiff that the CFS lawsuit was meritless.  ¶ 80.  He is alleged to have added that even if the CFS suit was well founded, his fee awards were sufficient to pay both the Plaintiff and CFS.  ¶ 81.  And again, he is alleged to have represented that he would not settle with CFS without paying Plaintiff in full.  ¶ 82.  Each of these representations are alleged to be false.  ¶ 83

Debtor maintains that these allegation either fail to set forth a representation or that if they do, they lack the requisite specificity to support a fraud count.  As to specificity, the Debtor contends that there is no allegation of how they were made (written or oral) or when they were made.  Debtor's Motion, ¶ 9.  The Court disagrees.  As the Debtor himself admits, the amendment alleges one oral representation upon

7

which the Plaintiff could have relied in deciding to enter into the 2009 Agreement. Motion ¶ 7 citing Amended Complaint ¶ 27. That representation refers to a November 22, 2008 meeting which was convened after Debtor's first default. The purpose of the meeting was to discuss a potential workout. Motion ¶ 7. As to a potential workout, the amendment alleges that in December 2008 the Debtor provided Plaintiff with information regarding additional fees which the Debtor would be paid. Next, the parties memorialized their resolution in the June 2009 agreement. That accord is alleged to contain representations and warranties by the Debtor upon which the Plaintiff relied. Among those representations, Plaintiff alleges, is a promise by the Debtor "to take all steps necessary to ensure" that Plaintiff received the money which the Debtor agreed was thenceforth the Plaintiff's. See Amended Complaint ¶ 72 quoting ¶ 2(i) of the 2009 Agreement.

Debtor argues, however, that a representation actionable in fraud must be based on an existing fact and may not be merely an expression of an opinion, expectation or declaration of intention." Debtor's Brief, 16. Perhaps so, but the existing fact alleged here is *not* that the Debtor *might* earn the fees. Rather, the information provided to Plaintiff in December 2008 was that the fees were earned, and while Debtor awaited receipt of such fees, the fees themselves are not alleged to have been conditional. The representation made to Plaintiff is that the fee was both earned by the Debtor and promised to Plaintiff in exchange for the consideration set forth in the 2009 Agreement. The allegations subsequent to the representation, taken as true, would make the representation false when the Debtor made it. Instead of doing everything he could to make sure that Plaintiff received the assigned fees, the Debtor is alleged to have taken

8

them for himself. That he took the money is not denied. Accordingly, the Court that Count I pleads misrepresentations on Debtor's part which are alleged with the requisite specificity.

*Intent*

Not only must the representations have been false, but the Debtor must have also intended that they deceive the Plaintiff. *See In re Adalian*, 474 B.R. 150, 160 (Bkrtcy.M.D.Pa. 2012) (explaining that the complaint must alleged specific statements or circumstances that demonstrate debtor's intent and purpose to deceive). The determination of the intent to repay is a subjective one, and may be inferred by examining the totality of the circumstances. *In re Ricker*, 475 B.R. 445, 457 (Bkrtcy.E.D.Pa. 2012)

The Amended Complaint alleges that the Debtor had no intention of paying the amount due within any time frame. ¶ 22. It is further alleged that he had no intention of using the additional funds which were advanced to him to pay a tax debt as he promised. ¶ 33. Circumstantial allegations support a claim of intent to deceive. First, the Debtor maintained that the CFS claim was meritless, yet the Debtor would end up paying CFS $250,000. ¶ 44. Second, the Debtor required that the Plaintiff escrow the Notice of Assignment of the fees from himself to the Plaintiff. ¶ 56. If the Debtor intended to abide by his promises, there would seemingly be no reason to escrow those notices. In the same vein, the Debtor had $163,000 left over after paying CFS, yet kept that money for himself. ¶ 46. When pressed for an explanation as to why he did not pay Plaintiff when he had the money, he glibly responded that some of it went to pay personal expenses and the rest was spent foolishly. ¶ 47. Taking all of this together,

the Court finds that intent to deceive on the Debtor's part is sufficiently plead.

*Reliance*

The third element of a fraud claim is reliance on the Plaintiff's part. Such reliance must be justifiable, not reasonable, reliance. *See Field v. Mans*, 516 U.S. 59, 70-72, 116 S.Ct. 437, 445–46 (1995). The Supreme Court explained that the general understanding of fraud incorporated in the statute favors a justifiable reliance standard which turns on a person's knowledge under the circumstances of a particular case. *Id.* at 71, 116 S.Ct. at 444. " 'Justification, is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case rather than of the application of a community standard of conduct to all cases.' " *Id.* (quoting Restatement (Second) of Torts, § 545A, cmt. b (1976)). The Supreme Court also stated that "the Restatement expounds upon justifiable reliance by explaining that a person is justified in relying on a representation of fact 'although he might have ascertained the truth or falsity of the representation had he made an investigation.' " *Id.* at 70, 116 S.Ct. at 444 (quoting Restatement (Second) of Torts, § 540). The concept of "justifiability" is not without limits, however, as the Supreme Court makes clear: "a person is 'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Id.* at 71, 116 S.Ct. at 444 (quoting Restatement (Second) of Torts, § 541, cmt. a).

Although the Debtor breached the parties' first agreement, what is also alleged supports Plaintiff's decision to contract with him a second time. Importantly, it is alleged that the Debtor did not withhold all of the money due Plaintiff under the 2007

10

Agreement. He is alleged to have paid well more than half of what was promised ($700,000 out of $815,000). Amended Complaint, ¶¶ 17-19  And when Plaintiff declared a breach, the Debtor did not deny it and was alleged to be contrite. ¶¶ 20, 26  The Plaintiff thus agreed to meet with the Debtor to work out their dispute. At that time, the Debtor represented that more fee awards were coming in which would enable him to pay the Plaintiff what he owed. Debtor even provided backup information to substantiate that representation. The allegations show Plaintiff as having engaged in some due diligence before deciding to risk doing business with the Debtor a second time. As things are alleged to have turned out, however, those additional fees were collected but the Debtor kept the money for himself despite what he is alleged to have promised. ¶¶ 44-46  Taking what is alleged to be true, the Court cannot say that it was entirely imprudent of the Plaintiff to enter into the 2009 Agreement. In other words, the amended complaint alleges reliance which appears justified under the circumstances.

*Damages*

The damages which are alleged to have resulted from Debtor's fraud are the loss of the money extended and not paid from the 2007 Agreement and the $50,000 advanced as part of the 2009 Agreement. In sum, Count I states a claim for non-dischargeable fraud under § 523(a)(2)(A).

*Count II - Timeliness*

As to the second count, Debtor begins by raising the affirmative defense of timeliness. According to applicable bankruptcy rules of procedure, non-dischargeability claims must be filed within 60 days of the first date set for the meeting of creditors. *See* B.R. 4007(a). This claim of conversion was filed, says Debtor, well past that deadline.

Motion to Dismiss, ¶ 24. Plaintiff does not dispute when the conversion count was first raised; instead, it argues that it was given leave to amend when the Court dismissed the original complaint. Transcript of Hearing, 13. Debtor's rejoinder is that while the Court granted leave to amend, it required any amendment to be consistent with its ruling. Motion to Dismiss ¶ 24.

*Relation Back*

> The applicable rule of procedure provides, in pertinent part:
>
>> (c) Relation Back of Amendments.
>> …
>> (1)    When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>> …
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading;

See F.R.C.P. 15(c) (made applicable by B.R. 7015). The relation back doctrine is designed to balance a defendant's interest in the protection afforded by the statute of limitations with the preference of the Rules for resolving disputes on their merits. *See Krupski v. Costa Crociere S.P.A.*, 560 U.S. 538, 550, 130 S.Ct. 2485, 2494 (2010). In essence, application of Rule 15(c) involves a search for a common core of operative facts in the two pleadings." *General Motors Corp. v. Schneider Logistics, Inc.*, 2008 WL 2785861, at *5 (E.D.Pa. July 17, 2008) quoting *Bensel v. Allied Pilots Ass'n.*, 387 F.3d 298, 310 (3d Cir.2004). When determining whether a common core of operative facts exists, the court looks at "whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds." *Id. (citing Michelsen v. Penney*, 135 F.2d 409, 416–17 (2d Cir.1943)). *See also Guaranty Corp. v.*

*Fondren (In re Fondren)*, 119 B.R. 101, 105 (Bkrtcy S.D.Miss.1999) (holding that claim that judgment debt should be excepted from discharge as debt arising out of willful and malicious injury related back to the date of original complaint that sought determination that debt was nondischargeable as debt arising by false pretenses or actual fraud); *Weiss v. Alicia (In re Alicea)*, 230 B.R. 492, 499 (Bkrtcy, S.D.N.Y. 1999) (holding that amended claim based on willful and malicious injury related back to timely plead actual fraud claim); *Rosener v. Majestic Management, Inc. (In re OODC, LLC)*, 321 B.R. 128, 143 (Bkrtcy.D.Del.2005) (amended complaint allowed to add breach of fiduciary duty count to pre-existing count alleging fraudulent transfers); *In re Steinmeyer*, 274 B.R. 201, 206 (Bkrtcy.D.S.C. 2001) (allowing amendment to plead nondischargeable embezzlement count to preexisting fiduciary fraud count after expiration of limitations period); *In re Colonial Cheshire I, LP*, 167 B.R. 748, 752-753 (Bkrtcy.D.Conn. 1994) (amendment allowed to plead fraudulent transfer in addition to preexisting preference count after expiration of limitations period); and *In re Kruszynski*, 150 B.R. 209, 212-214 (Bkrtcy.N.D.Ill. 1993) (allowing amendment to add fraud count related back to timely filed divorce/maintenance non-dischargeability count where fraud claim arose out of same facts and circumstances)

      The Court begins with Debtor's claim that Count II raises an "entirely new cause of action." This is an overstatement. What is "new" is the legal theory upon which Count II is premised; the facts are neither new nor changed in any way prejudicial to the Debtor. The same set of operative facts appear in the amended pleading: the 2007 Agreement to assign Debtor's fee award (Compare Complaint ¶ 11 with Amended Complaint ¶ 15); the Debtor's failure to pay over all of the required amount of that award

13

(Compare Complaint ¶ 15 with Amended Complaint ¶ 19); the parties' resolution of their dispute whereby additional funds would be given to him in exchange for his promise to pay what he owed the plaintiff out of future fee awards (Compare Complaint ¶¶16-17 with Amended Complaint ¶¶ 25-35); their memorialization of this accord in what is referred to as the 2009 agreement (Compare Complaint ¶ 16 with Amended Complaint ¶ 34); the Debtor's subsequent receipt of fee awards and his failure, once again, to pay over to Plaintiff all that he promised to (Compare Complaint ¶ 19 with Amended Complaint ¶¶ 44-46); and his acknowledgment that he owes the money. (Compare Complaint ¶ 21 with Amended Complaint ¶ 47)  To the extent that there are new facts in the amendment, they do no more than amplify what was already in the original pleading. These consist primarily of fleshing out the allegations with regard to events preceding and following the 2009 Agreement.  See Amended Complaint ¶¶ 25-47.  These additional allegations do not mean, however, that what was plead in the original complaint would not have supported a conversion claim.  To the contrary, upon review of the earlier pleading, the Court concludes that had conversion been plead on those facts, it would likewise have been found to state a claim.  Based on that finding, the Court finds that the claim in Count II of the amended complaint relates back in time to the filing of the original pleading.

*Count II – Legal Sufficiency*

The Debtor also maintains that Count II fails to state a claim for a debt arising out willful and malicious injury by the Debtor.  Subsection (a)(6) of § 523 provides that "[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt—... for willful and malicious injury by the debtor to another entity or to the

property of another entity." 11 U.S.C. § 523(a)(6). This type of claim generally relates to torts and not to contracts. 4 *Collier on Bankruptcy* ¶ 523.12[1] (16th ed.). By its terms, it may apply to a broad range of harmful conduct. *Id.* To fall within this exception, the injury must have been both willful *and* malicious. *Id.*, ¶ 523.12[2]. The term "willful" refers to a deliberate or intentional injury, not just a deliberate or intentional act that leads to injury. *In re Coley,* 433 B.R. 476, 497 (Bkrtcy.E.D.Pa. 2010) (citing *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)). The plaintiff must establish that the debtor "purposefully inflict[ed] the injury or act[ed] in such a manner that he is substantially certain that injury will result." *In re Conte,* 33 F.3d 303, 305 (3d Cir.1994). "Malice" refers to actions that are wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will. 4 *Collier, supra,* at ¶ 523.12[2]; *see also In re Wooten*, 423 B.R. 108, 130 (Bankr.E.D.Va.2010) (explaining that malice does not mean the same thing for nondischargeability purposes under § 523(a)(6) as it does in contexts outside of bankruptcy: "In bankruptcy, debtor may act with malice without bearing any subjective ill will toward plaintiff creditor or any specific intent to injure same*.*")

The Plaintiff premises its claim of willful and malicious injury on conversion. Claims of conversion have been held to constitute willful and malicious injury for purposes of § 523(a)(6). *See, e.g.*, *In re Luby,* 438 B.R. 817, 837 (Bkrtcy.E.D.Pa. 2010); *In re Rezykowski,* 493 B.R. 713, 723 (Bkrtcy.E.D.Pa. 2013) The classic, common law definition of conversion under Pennsylvania law is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank,*

15

*N.A.*, 751 A.2d 655, 659 n. 3 (Pa.Super.2000).

The Court finds that the amendment pleads conversion. Debtor assigned his rights in the legal fees to the Plaintiff. ¶ 35. Thereafter, those fees become the Plaintiff's property. After he received that fee award, the Debtor failed to turn over the fees to the Plaintiff but instead kept them for himself. ¶¶ 45-46. That, in and of itself, would suffice to allege conversion. In addition, however, the amendment alleges facts bearing on Debtor's state of mind which, if proven, would demonstrate that such conduct was both willful and malicious. The Debtor is alleged to have freely admitted that he kept the money for himself when he knew that money belonged to the Plaintiff. And it is further alleged that this was not done out of necessity. Far from suffering a change of circumstances or reversal of fortune, the Debtor's decision to deprive Plaintiff of its property is alleged to have been borne of selfishness. He is alleged to have explained that he used some of the money to pay personal expenses and spent the remainder "foolishly." ¶ 47. Taking this as true, the Court finds such conduct to be both willful and malicious as those terms are understood in the context of non-dischargeable debts in bankruptcy. Accordingly, the Court concludes that Count II states a claim for a non-dischargeable debt arising out of willful and malicious injury under § 523(a)(6).

*Summary*

The Debtor's Motion to Dismiss the Amended Compliant will be denied. An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated: March 6, 2014