# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| LAWRENCE F. FELDMAN AND ROBYN FELDMAN | : |
| DEBTOR(S) | : BANKRUPTCY NO. 13-11302 |
| AMERICAN ASSET FINANCE, LLC | : |
| PLAINTIFF(S) | : |
| VS. | : |
| LAWRENCE F. FELDMAN | : |
| DEFENDANT(S) | : ADVS NO. 13-0287 |

## OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

***Introduction***

Creditor, American Asset Finance LLC ("the Plaintiff") has filed a Motion for Summary Judgment in the above adversary proceeding. The Defendant, Debtor Lawrence F. Feldman, ("Debtor" or "Defendant") opposes the motion. The parties agreed to disposition of the Motion on the papers, and the Court thereafter took the matter under advisement.[1] For the reasons which follow, the Motion will be granted and

---

[1] Included in the record were the briefs which accompanied the Motion and Response. Plaintiff also filed a Supplemental Brief on June 5, 2014, which was unsolicited and for which leave of court was not first obtained. *See* Judge Raslavich's Practices and Procedures, Adversary Proceedings ¶ 3c. The Court, accordingly, did not consider that supplemental filing in making the ruling contained herein.

a judgment declaring the debt owed to the Plaintiff non-dischargeable will be entered.[2]

*Causes of Action and*
*The Plaintiff's Theory*

The Plaintiff seeks a determination that its claim against the Debtor will not be discharged by his bankruptcy. Plaintiff's Amended Complaint requests such relief on two alternative grounds: first, that the claim is the result of the Debtor's fraud[3] and, second, that it arose out of the Debtor's willful and malicious conduct.[4] The instant motion for summary judgment is based on the second count only. Specifically, Plaintiff maintains that the record establishes that the Debtor converted its property, and that claims of conversion constitute willful and malicious injury for purposes of § 523(a)(6). *See, e.g., In re Luby*, 438 B.R. 817, 841 (Bkrtcy.E.D.Pa. 2010); *In re Rezykowski*, 493 B.R. 713, 723 (Bkrtcy.E.D.Pa. 2013).

*Summary Judgment*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").[5] Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most

---

[2] Because this matter involves a request to determine dischargeability, it is within this Court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(I)(including among core proceedings such causes of action)
[3] *See* 11 U.S.C. § 523(a)(2)(A)(determining as non-dischargeable "debts for money …obtained by false pretenses, false representation, or actual fraud").
[4] *See* 11 U.S.C. § 523(a)(6)(determining as non-dischargeable "debts for willful and malicious injury by the debtor to another entity or to the property of another entity")
[5] Made applicable to adversary proceedings by B.R. 7056.

2

favorable to the nonmoving party, and against the movant. *See Roth v. Norfalco, LLC,* 651 F.3d 367, 373-74 (3d Cir.2011). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Although summary judgment cannot be granted whenever material fact questions remain unresolved, summary judgment is often appropriate when a claim or defense at issue is based upon *res judicata* (claim preclusion from an earlier action) or collateral estoppel (issue preclusion from an earlier action). *In re Kridlow*, 233 B.R. 334, 342 (Bkrtcy.E.D.Pa.1999); *see also* 18 James W. Moore, et al, *Moore's Federal Practice - Civil* § 131.50[3] (3d ed. 2014). In such circumstances the court need only compare the claims in the original action, the result in the original action, and the claims presently before the court. *Kridlow, supra*. Pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court is required to give a state court's decisions "the same preclusive effect in federal court they would be given in the courts of the rendering state." *Aldrich Nine Assoc. v. Foot Locker Specialty, Inc.,* 306 Fed. Appx. 723, 726 (3d Cir.2009) (citing *Del. River Port Auth. v. Fraternal Order of Police, Penn–Jersey Lodge 30,* 290 F.3d 567, 573 (3d Cir.2002)); *see also San Remo Hotel v. City & Cnty. of S.F.*, 545 U.S. 323, 336, 125 S.Ct. 2491, 2500, 162 L.Ed.2d 315 (2005) (explaining that § 1738 encompasses the issue preclusion, or collateral estoppel, doctrine).

*Record*

As the Plaintiff's argument is premised on the preclusive effect of a state court judgment, the record, accordingly, is limited to what transpired in that case. The record here consists of the following undisputed facts: On June 27, 2011, the Plaintiff filed suit

against Defendant in the Superior Court of New Jersey. The Complaint alleged breach of contract, breach of fiduciary duty, and conversion. It also requested an accounting and attorney's fees. It further contained a request for production of documents. Motion, Ex.1. On July 6, 2011, the Plaintiff served the Complaint and Document Request upon Defendant. *Id.* Ex. 2. On August 18, 2011, the Defendant filed an answer to the Complaint. *Id.* Ex. 4. On August 25, 2011, the Plaintiff notified Defendant that it had failed to timely respond to the document request. *Id.* Ex. 5. On September 20, 2011 the Plaintiff filed a motion to suppress the answer based on the applicable rule of procedure dealing with failures to respond to discovery. *Id.* Ex. 6   On September 28, 2011, the Defendant filed a response opposing the motion as well as a cross-motion. *Id.* Ex. 7. On October 21, 2011, the Superior Court denied the motion. *Id.* Ex. 8.[6]

From this point, the litigation took a two-track direction as the parties agreed to mediation while discovery continued unabated. On November 21, 2011, the matter was referred to mediation. *Id.* Ex. 10. On January 3, 2012, the mediator contacted the parties to arrange a telephone conference during which the parties would later discuss the issues and schedule the mediation. *Id.* Ex. 11. On January 28, 2012, while the parties were preparing for mediation, the Plaintiff filed a second motion to suppress Defendant's answer based on his failure to respond to discovery. *Id.* Ex. 9. On February 17, 2012, the Superior Court entered an order compelling Defendant to respond to discovery and warning him that failure to do so would result in suppression of his answer. *Id.* Ex. 13. On March 7, 2012, the mediation was held and the parties agreed to an exchange of documentation relevant to the issues discussed. *Id.* Ex. 15. Some

---

[6] While no reason was given as to why the Court denied the motion, the order noted that the Motion was opposed.

documentation was exchanged; however, the Plaintiff contended that the Defendant had not fully disclosed all of his assets and the mediation proved unsuccessful. *Id.* Ex. 16.

With out of court attempts at settlement having failed, the Plaintiff filed another motion to suppress Defendant's answer on April 20, 2012. This motion was based on the Defendant's failure to respond to outstanding discovery requests as required by the Court's February 17 Order. *Id.* Ex. 14. On May 11, 2012 the Superior entered an order suppressing the Answer but without prejudice. *Id.* Ex. 17. The Motion was unopposed. *Id.* On June 15, 2012 the Superior Court issued a notice of trial. *Id.* Ex. 18. On July 10, 2012, the Plaintiff filed another motion to suppress. *Id.* Ex. 17. On July 31, 2012 the Superior Court entered an order suppressing the Defendant's answer with prejudice*. Id.* Ex. 20. Again, the Motion was unopposed. On September 21, 2012, the Superior Court entered a notice of a hearing on Plaintiff's Motion for Final Judgment*. Id.* Ex. 21. On October 19, 2012, the Superior Court entered an Order of Final Judgment against the Defendant*. Id.* Ex. 22.

### *Arguments*

The Plaintiff contends that the Superior Court ruling should be given preclusive effect in this proceeding, because the ruling found the Debtor liable for conversion. As conversion constitutes willful and malicious conduct for purposes of non-dischargeability under § 523(a)(6), Plaintiff maintains that the Defendant may not dispute that he willfully and maliciously injured the Plaintiff. Accordingly, says the Plaintiff, summary judgment should be entered in Plaintiff's favor at this time. Pl. Br. 4-10

The Defendant contends that the state court ruling should have no preclusive

effect. He argues first that the law upon which the Plaintiff relies in that regard is inapposite. Defendant's Brief 2-3. Second, he maintains that the record does not establish four of the five elements for collateral estoppel.[7] Specifically, he argues that the issue before this court is not identical to the issue before the state court; that the issue was not actually litigated in the prior proceeding; that the state court did not issue a final judgment on the merits; and that the issue determined was not essential to that judgment. Def. Br. 4-12. Third, he argues that the equities of the case in general weight in favor of denying summary judgment at this time.

The Court will analyze all of the Defendant's challenges, albeit out of order. It will begin with the second challenge; to wit, that the record fails to establish the elements of collateral estoppel. Determining if the facts support preclusion will determine what case law is apposite. Thereafter, the Court will determine what equitable considerations might bear on the issue of whether summary judgment is appropriate.

***Collateral Estoppel***

Otherwise referred to as issue preclusion, collateral estoppel prohibits the "relitigation of issues that have been adjudicated in a prior lawsuit." *Waris v. Frick*, 2009 WL 2568270, at *3 (E.D.Pa. Aug. 18, 2009) quoting *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997). Collateral estoppel is applicable in non-dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284, n.11, 111 S.Ct. 654, 658 (1991). Where the earlier ruling emanated from a state court, a federal court "begins with the fundamental principle that judicial proceedings [of any court of any state] shall have the same full

---

[7] The one element that the parties appear to agree on is the fifth: identity of parties. As the same parties to the state court case are the same parties to this non-dischargeability proceeding, that element is established by the record.

6

faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." *In re Leonelli-Spina*, 426 Fed.Appx. 122, 125 (3d Cir. 2011). It is the general federal rule that the preclusive effects of prior cases are determined by the law of the prior forum. *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 145 (3d Cir.1999) In New Jersey, the prior forum in this instance, litigation of a question will be precluded.

> if the issue decided in the prior action is identical to the one presented in the subsequent action, if the issue was actually litigated---that is, there was a full and fair opportunity to litigate the issue---in the prior action, if there was a final judgment on the merits, if the prior determination was essential to the judgment, and if the party against whom preclusion is asserted was a party or in privity with a party to the proceeding.

*Perez v. Rent-a-Center, Inc.,* 186 N.J. 188, 199, 892 A.2d 1255, 1261 (2006)

### *Identity of Issues*

Material to both the state court action and this non-dischargeability proceeding is the question of whether Defendant converted Plaintiff's property. In the state court action, conversion was alleged at Count III. *See* Motion, Ex. 1. In the adversary proceeding, conversion is the factual predicate for the claim of willful and malicious injury in Count II. *See* Amended Complaint. Under New Jersey law, "[c]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *McAdam v. Dean Witter Reynolds, Inc.,* 896 F.2d 750, 771 (3d Cir.1990) (citing *Mueller v. Tech. Devices Corp.,* 8 N.J. 201, 207, 84 A.2d 620, 623 (N.J. 1952)). In both lawsuits it is alleged that Defendant wrongly took possession of what was rightfully the Plaintiff's property. There is alleged in both proceedings conduct which is actionable under other legal theories,

7

but common to both is a count for conversion.

***Actually Litigated***

Not only must the same issue be before this Court, but that question must have been "actually litigated." This element is the crux of the parties' dispute. Defendant insists that the issue was not actually litigated because the state court judgment was entered by default. Def. Br. 10. In support, the Debtor relies on a case which he says is similar, and which refused to accord preclusive effect to a state court default judgment entered after discovery was ignored. See *In re Parker*, 250 B.R. 512 (M.D.Pa. 2000). In *Parker*, a default judgment for fraud was entered against the debtor prepetition after he failed to participate in discovery. The debtor sought to discharge the judgment in a subsequent bankruptcy. The judgment creditor sued to except his judgment from discharge, and raised issue preclusion as to the Debtor's right to disprove fraud. The Bankruptcy Court refused to apply collateral estoppel to the issue of fraud, noting that the doctrine should be applied sparingly when the prior judgment was obtained by default. 250 B.R. at 517. The Bankruptcy Court explained that the state court record failed to show sufficiently that the debtor's "conduct rose to the level of deliberate frustration of the [prior forum's] judicial process." *Id.* at 518. Specifically, the Court therein found no pattern of abuse. It also noted that the debtor was not a seasoned litigator, but was instead a pro se litigant whose unresponsiveness in the prior forum might have been the result of guilelessness or limited financial resources. *Id.* at 519-520. The *Parker* Court was not confronted with "tactics which tarnished the judicial process and which called into question the veracity of [a defense]." *Id.* at 519

Any attempt to draw parallels between the facts in this case and those in *Parker*

8

is highly strained. The circumstances of this case differ from *Parker* in terms of the level of debtor sophistication, the extent of the underlying discovery abuse, and the degree of leniency granted in the prior forum. Unlike the debtor in *Parker*, Mr. Feldman, an attorney, <u>is</u> a seasoned litigator[8] who would unquestionably know the responsibilities that apply in litigation. He would know that legitimate discovery requests may not be blithely ignored without consequence. He would likewise know how to respond to the requests if he undertook his own defense. And if the discovery requests were in some way objectionable or burdensome, he would have further known how to seek relief from the court. There is no indication in the record that he did anything. The Debtor's failings in this regard cannot reasonably be attributed to inconvenience, impecuniousness, or inexperience.

Also unlike *Parker*, the Debtor's discovery misconduct here was not an isolated instance. In *Parker*, the debtor was to be deposed in October 1996, but failed to appear at that examination. On November 4, 1996 the creditor moved for a default judgment which was granted eleven days later. On December 18, 1996 damages were assessed against him. In his bankruptcy case, the debtor explained that he had relocated prior to the discovery requests and did not receive the notices of default until after default had been entered. *Parker's* misconduct was limited to a single discovery request which resulted in a default judgment entered roughly 60 days later.

In the case *sub judice*, the Debtor's discovery violations were neither limited to one instance, nor explained or excused. The record reflects that for at least ten months, the Defendant refused to respond to legitimate discovery requests. While the Plaintiff's

---

[8] Indeed, the underlying basis of the parties' dispute is the non-turnover of a pledged asset, i.e., legal fees from class action cases which the Defendant himself was instrumental in obtaining.

first motion to suppress based on noncompliance was denied in October 2011 (Motion, Ex. 8), Plaintiff filed another Motion to Suppress in January 2012 after the Debtor failed, yet again, to respond. *Id.* Ex. 9. In February 2012 the Superior Court entered an Order directing Debtor's compliance and explicitly warning that his failure to do so would result in suppression of his Answer. *Id.* Ex. 13. Defendant replied to the requests with what Plaintiff characterized as unresponsive information and the Plaintiff moved again for suppression on April 23, 2012. *Id.* Ex. 14. On May 11, 2012 the Superior Court entered an order suppressing the Answer but *without* prejudice. *Id.* Ex. 17. A Notice of Trial was entered on June 15, (and again on July 2) 2012, scheduling trial for September 4, 2012. *Id.* Ex. 18. On July 10, 2012, the Plaintiff filed another Motion to Suppress Answer. *Id.* Ex. 17. On July 31, 2012 the Superior Court entered an Order Suppressing Defendant's Answer this time *with* prejudice. *Id.* Ex. 20. On September 21, 2012, the Plaintiff moved for entry of a Final Judgment. *Id.* Ex. 21. On October 19, 2012, the Superior Court entered a Final Judgment against the Defendant. *Id.* Ex. 22.

The record reflects that at no time after filing of the January 2012 motion did the Defendant fully respond to discovery. When Plaintiff contested Defendant's February 2012 discovery responses as incomplete or non-responsive, Defendant did not appear in court to defend himself. *See Id.* Ex. 17 (Order Suppressing Answer without prejudice, ex. 2). The record similarly reflects that the Defendant failed to provide agreed upon documentation in mediation. *See Id.* Ex. 16. In short, this is not at all a case of a single violation over a short period of time.[9] Rather, the state court record demonstrates

---

[9] The entry of Final Judgment, even by "default," cannot be considered perfunctory in this context. The applicable New Jersey Superior Court Rule of Procedure provides a multi-stage process by which a default might result in a final judgment. *See* N.J.S.A Rule 4:23-5. That rule provides for an Order Suppressing the Answer for failure to make discovery without prejudice first. *Id.* 4:23-5(a)(1). If the

10

multiple refusals to comply with discovery requests over many months.

Despite Defendant's pattern of misconduct, it was not until entry of a final judgment that relief was foreclosed to him. The Superior Court record demonstrates that Defendant was afforded more than one opportunity to rectify his misconduct. The first Order entered suppressing the Defendant's Answer was *without* prejudice. *Id.* Ex. 17. That gave the Defendant the right to move to vacate the suppression order. *See Rule* 4:23-5(a). He did not. As a result, Plaintiff filed a second motion to suppress, this time requesting suppression with prejudice. *See Rule* 4:23-5(b). The Defendant did not appear at the hearing or otherwise oppose it; whereupon the Superior Court granted the motion *with* prejudice. *Id.* Ex. 20. That still, however, did not mean that the Defendant could not seek relief, because no final judgment had yet been entered. On September 21, 2012, the Plaintiff moved for the entry of final judgment and provided the Defendant with notice of the hearing on that request. *Id.* Ex. 21. *See Rule* 4:43-2(b) (providing for final judgment by default by the court). On October 12, 2012, the Defendant did not appear at the hearing and the Superior Court granted the motion entering final judgment against the Defendant. *Id.* Ex. 22. Even at this late stage in the proceedings, the Defendant could still have requested relief. See *Rule* 4:50-1(providing relief from final judgment based on, inter alia, excusable neglect and "any other reason justifying relief from the operation of the judgment or order"); and *see also Rule* 4:50-2 (allowing party to seek such relief within one year of entry of judgment). The Superior Court imposed a

---

defendant does not move to vacate the order of suppression within a certain time period, then the plaintiff may request the order to be entered with prejudice. *Rule* 4:23-5(a)(2). An Order with prejudice will be granted unless the defendant moves to vacate the previously entered order and provide the requested discovery, or exceptional circumstances exist. *Id.* The record reflects that plaintiff complied with all of these procedures. In other words, this cannot be considered a "snap" judgment entered against the Defendant.

11

harsh sanction against the Defendant; however he cannot plausibly maintain that he was not given ample opportunity to avoid that outcome.

Based on the significant distinguishing facts, the Court considers any reliance on the *Parker* decision, *supra*, to be misplaced. If there is a case that more closely resembles the matter *sub judice,* it is—contrary to what Defendant may insist—*In re Docteroff*, 133 F.3d 210 (3d Cir. 1997).[10] There, a prepetition fraud judgment was entered against the debtor. When the debtor filed bankruptcy to discharge the judgment, the judgment creditor raised issue preclusion on the question of the debtor's fraud. The debtor argued that because the prepetition judgment was entered by default, there was no "actual litigation" of the fraud. The Third Circuit rejected that argument. As the following excerpt demonstrates, the debtor's conduct in that case was highly consistent with that of the Debtor here:

> Next, Docteroff asserts that he did not actually litigate any issue in the previous lawsuit because the judgment was not a determination on the merits but was entered against him by default as a sanction for his bad-faith conduct in discovery. We reject Docteroff's contention. Docteroff had every opportunity to fully and fairly litigate any relevant issue in the district court in Washington where Wolstein sued him in the federal court, charging him with fraud in the diversion of progress payments on the construction of the Lady Iris. Docteroff simply elected not to comply with court orders. This is not a typical default judgment where a defendant neglects or elects not to participate in any manner because of the inconvenience of the forum selected by the plaintiffs, the expense associated with defending the lawsuit, or some other reason. [citations omitted] *To the contrary, for several months, Docteroff participated extensively in the lawsuit. He*

---

[10] Defendant seeks to distinguish Docteroff on the basis that the prior forum there was a federal court, but in the case *sub judice* the prior forum was a state court. For purposes of preclusion, that distinction is irrelevant. The New Jersey State preclusion standard mirrors the Federal standard. Where *Docteroff* matters is that the debtor's conduct in that case; to wit, filing an answer but then obstructing discovery and claiming that the default judgment entered against him lacked preclusive effect is precisely what occurred between the Plaintiff and Defendant here. Thus, the Court finds *Docteroff* particularly apposite.

12

> *filed an answer, noticed Wolstein's deposition, engaged several lawyers, including local counsel, filed papers with the court, and corresponded with opposing counsel.* [citation omitted] Apparently, Docteroff realized the meritlessness of his position and decided to frustrate orderly litigation by willfully obstructing discovery.
>
> We do not hesitate in holding that a party such as Docteroff, who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel application. [citation omitted] In doing so, we join with [the] Ninth and Eleventh Circuit courts of appeals in holding that, under these circumstances, the actual litigation requirement is met. To hold otherwise would encourage behavior similar to Docteroff's and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple. We reject such a result.

*In re Docteroff, supra*, 133 F.3d at 215 (emphasis added).

Crucial to the *Docteroff's* court finding of "actual litigation" of the issue was a finding of bad faith. *See Parker, supra*, 250 B.R. at 521 ("Bad faith is the hallmark of the *Docteroff* decision.") Like Mr. Docteroff, the instant Debtor had the opportunity to litigate the merits of the Plaintiff's claim but chose instead to frustrate attempts to develop the record. The excuses he now offers for not complying with discovery; to wit, other personal and health reasons, were only first raised well *after* the fact. The Court finds the belated offering of these explanations to be a not so subtle post hoc stratagem. For present purposes, and consistent with the Third Circuit's rationale in *Docteroff*, the Court finds the issue of conversion to have been actually litigated in the New Jersey Superior Court.

### *Judgment on the Merits*

The Defendant also disputes that the state court ruling constitutes a judgment on the merits. A judgment is normally said to have been rendered "on the merits" only if it

13

was "delivered after the court ... heard and *evaluated* the evidence and the parties' substantive arguments." *Johnson v. William*, 133 S.Ct. 1088, 1097 (2013)  Where a party refuses to produce material evidence, a court may construe such conduct as "an admission of the want of merit in the asserted defense." *Hammond Packing Co. v. State of Arkansas*, 212 U.S. 322, 350-351, 29 S.Ct 370, 380 (1909). The Supreme Court has held that it is not a violation of due process to enter a default judgment or other sanction against a party for refusal to cooperate with discovery unless that failure to comply has been "due to inability, and not to willfulness, bad faith, or any fault of petitioner." *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 210-12, 78 S.Ct. 1087, 1095-96, 2 L.Ed.2d 1255 (1958).

Though the judgment at issue here did not follow a trial, it does not mean the state court was hasty. To the contrary, the record shows that the Superior Court was remarkably tolerant. Its first Order Suppressing Defendant's Answer was entered *without* prejudice. When Defendant failed again to respond to discovery, the Superior Court entered a second such order this time *with* prejudice. When Plaintiff sought a Final judgment based on the suppression of the answer, the Superior Court heard the request, but only after providing notice and an opportunity to be heard to the Defendant. As in *Docteroff,* the Defendant had a full and fair opportunity to litigate the relevant issues. There was no denial of due process here. The state court entered a Final Judgment against the Defendant only after his repeated abuses of the processes and dignity of that tribunal.

In entering its judgment, the Superior Court effectively treated Defendant's obstruction of discovery as an admission of liability. The Final Judgment, it should be

noted, is expressly based on a *finding* of conversion. The significance of that finding is important for present purposes. A court cannot make a finding without examining the record; the merits of a case either rise or fall based on the record. It is noteworthy, therefore that the judgment entered by the Superior Court followed a finding on the merits of the Plaintiff's conversion claim.

***Essential to the Judgment***

Finally, the Defendant maintains that the finding of conversion was not essential to the prior judgment. Def. Br. 10. The Third Circuit considers an issue to be "essential" for collateral estoppel purposes if it is "critical" to the judgment as opposed to mere dicta. *See O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1067 (3d Cir. 1991). In that regard, the Third Circuit has relied on the following Restatement comment:

> If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

*O'Leary, supra* quoting *Restatement (Second) of Judgments* § 27 comment h, at 258 (1982). As hereinbefore noted, the Final Judgment entered by the Superior Court was *expressly* based on a finding of conversion. While the state court also found defalcation, the finding of conversion alone would have been enough to support the judgment. More importantly, however, it was essential to the entry of the judgment against the Defendant.

15

*The Equities*

Finally, the Defendant maintains that because collateral estoppel is an equitable doctrine, Plaintiff's alleged ethical violations bar it from asserting preclusion. *See* Def. Br. 12-13. Defendant alleges a number of ethical violations on Plaintiff's part in the course of prosecuting this action. *Id*. The Court remains unpersuaded. These alleged violations, just as the Defendant's personal circumstances, could have been but were never raised in the Superior Court. That court was in the best position to assess them if they indeed occurred and were relevant, as Defendant insists. The Defendant's argument, once again, appears to be fashioned after the fact. Given the undisputed facts of record, the equitable considerations most relevant here are two-fold: first, the protection afforded litigants from the burden of relitigating an identical issue with the same party; and second, the deterrence of abuse and promotion of judicial economy. *See In re Liquidation of Integrity Ins. Co./Celotex Asbestos Trust*, 214 N.J. 51, 67, 68, 67 A.3d 587, 596-597 (N.J. 2013) These factors militate against the Debtor

*Conclusion*

Principles of preclusion appropriately apply here to bar re-litigation of the question of whether Defendant is liable for conversion. The Plaintiff's Motion for Summary Judgment will be granted. An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated: <u>July 23, 2014</u>