**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| | : | |
| **LAWRENCE F. & ROBYN FELDMAN,** | : | |
| | : | |
| Debtors. | : | Bky. No. 13-11302 |
| _____ | : | |
| | : | |
| **AMERICAN ASSET FINANCE, LLC,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **LAWRENCE F. FELDMAN,** | : | |
| | : | |
| Defendant. | : | Adv. No. 13-0287 |
| _____ | : | |

**O P I N I O N**

## I. INTRODUCTION

In this adversary proceeding, which has a long and contentious history, the Plaintiff,

American Asset Finance, LLC ("AAF") seeks to hold a debt owed to it by Lawrence F. Feldman

(the "Debtor" or "Feldman") nondischargeable pursuant to section 523 of the Bankruptcy Code.

The debt at issue arises from a state court judgment in the Plaintiff's favor regarding AAF's

funding of Feldman's class action lawsuit representations.  Pursuant to a contract between the

parties, AAF was owed a portion of Feldman's recovery in those actions.

The present issue before the Court is not the dischargeability of the debt, *per se*. Rather,

the question is what sanctions should be imposed on the Debtor for his long pattern of failing to

comply with discovery orders and agreements. For the reasons discussed below, the Court holds

that the proper sanction for Feldman's repeated and flagrant discovery violations is to grant the

Plaintiff a default judgment in this adversary proceeding.

## II. FACTUAL HISTORY

The Debtor is an attorney who represented clients in class action lawsuits. AAF is a

company that purchased interests in settled cases. In July 2007, the Debtor entered into an

agreement with AAF (the "2007 Agreement"), pursuant to which the Debtor assigned his interest

in legal fees from certain class action cases (e.g. fen-phen litigation). In August 2008, the Debtor

received a fee award of about $1.2 million (the "First Award"); $800,000 of this was owed to

AAF. However, the Debtor paid the Plaintiff only $700,000.

In November 2008, the Plaintiff's principals met with the Debtor to discuss his alleged

breach. The Debtor provided the Plaintiff with information regarding future expected fees. In

June 2009, the parties resolved their dispute over the 2007 Agreement by entering into a second

agreement (the "2009 Agreement"). Pursuant to the 2009 Agreement, the Debtor assigned to the

Plaintiff his interest in legal fees in two other class actions (the iPod Nano and Vioxx cases). The

2009 Agreement reduced the original amount owed to AAF and dictated that Feldman would

receive an additional $50,000 from AAF to satisfy an IRS lien. The 2009 Agreement also stated

that the Debtor would pay AAF $196,000 from future fee awards. However, Feldman failed to

turn over a portion of his fees in these cases as well. The Debtor currently owes the Plaintiff

$484,433.76. See In re Feldman, 500 B.R. 431 (Bankr. E.D. Pa. 2013); Amended Complaint.

At the time of the 2009 Agreement, another company, Counsel Financial Services

("CFS") had a pending lawsuit against the Debtor, also due to the Debtor's failure to pay (the

"CFS Lawsuit"). AAF was aware of the CFS Lawsuit. The CFS litigation encompassed all of

Feldman's pending lawsuits, including those against Vioxx and iPod Nano. Transcript of hearing

held on March 12, 2019 (hereinafter, "Tr.") at 44.  On March 1, 2010, Feldman settled the CFS

Lawsuit and agreed to pay CFS $200,000 from Vioxx fees and $50,000 from iPod Nano fees,

plus another $330,000 at the rate of $6,000 per month. See Amended Complaint; doc. no. 94 at 2

(the "CFS Settlement").  The Debtor paid CFS a portion of subsequent proceeds from fee awards

and the Debtor was left with a remainder of $163,000.[1]  Instead of paying that remainder to the

Plaintiff, as agreed, the Debtor kept the money. He admitted that he spent the money on himself.

See In re Feldman, 506 B.R. 222 (Bankr. E.D. Pa. 2014).

> The CFS Settlement states, *inter alia*, that CFS and Feldman's
>
> obligations to repay and perform the Obligation is secured by, among other things, a first
> priority security interest in (I) all of the Accounts and General Intangibles of [Feldman]
> relating to the performance of legal services . . . Except that notwithstanding anything to
> the contrary and without any acknowledgment of priority, [CFS] acknowledges that it is
> aware of assignment to American Asset Funding . . . .

Doc. no. 103 at Ex. E at 4.

> The Debtor contends that CFS holds a first priority secured lien on the proceeds which

the Plaintiff seeks to collect. Answer at ¶18.

> On October 12, 2012, following the Defendant's failure to provide discovery or appear at

trial in state court, judgment in the amount of $407,433.76 plus post-judgment interest at the rate

of $5,500 per month was entered in favor of AAF and against the Debtor in the Superior Court of

New Jersey in Passaic County (the "State Court Action"). The State Court judgment was "based

on a finding that the damages arise from defendants' conversion and defalcation." Doc. no. 27 at

3 (the "State Court Order").  Prior to the entry of this order, the Defendant was sanctioned by the

---

[1] At the March 12th hearing, Defendant's counsel represented that this amount was $75,000. Tr. at 48. The alleged difference is immaterial.

State Court for failure to provide discovery. Doc. no. 52 at ¶10.

## III. PROCEDURAL HISTORY (INCLUDING DISCOVERY ORDERS AND DEADLINES)

**Bankruptcy and Adversary Proceeding**

Lawrence and Robyn Feldman filed for chapter 7 bankruptcy protection on February 14, 2013. This adversary proceeding was filed by AAF against Lawrence Feldman a short time later, on May 16, 2013. Following the granting of Defendant's Motion to Dismiss on November 6, 2013, see In re Feldman, 500 B.R. 431 (Bankr. E.D. Pa. 2013),[2] the Plaintiff filed an Amended Complaint on November 26, 2013.

The Amended Complaint states two causes of action: 1) nondischargeability pursuant to 11 U.S.C. §523(a)(2)(A); and 2) nondischargeability pursuant to 11 U.S.C. §523(a)(6).

The Debtor's motion to dismiss the Amended Complaint was denied on March 6, 2014. See In re Feldman, 506 B.R. 222 (Bankr. E.D. Pa. 2014). The Debtor answered the Amended Complaint on April 15, 2014.

**Judge Raslavich's Opinion and Related Appeal**

Any progress in this adversary was soon interrupted by the following series of events. On May 7, 2014, AAF filed a Motion for Summary Judgment (based on the holding of the state court), which was granted on July 23, 2014. See In re Feldman, 514 B.R. 117 (Bankr. E.D. Pa. 2014), rev'd Feldman v. American Asset Finance, LLC, 534 B.R. 627 (E.D. Pa. 2015). Judge Raslavich held that the judgment entered in the State Court Action was entitled to preclusive

---

[2] This matter was previously adjudicated by Judge Raslavich (who authored the prior related opinions). Upon Judge Raslavich's retirement in October 2017, both the bankruptcy and adversary proceeding were reassigned to the undersigned judge.

effect that barred the Debtor from disputing nondischargeability.

On appeal, the District Court reversed and vacated the order granting summary judgment to the Plaintiff. See Feldman v. American Asset Finance, LLC, 534 B.R. 627 (E.D. Pa. 2015). The District Court found that, both because there was not identity of the issues between the State Court Action and this Adversary Proceeding and because the State Court Action was not "actually litigated," collateral estoppel did not apply to the State Court Order.[3] The Plaintiff appealed. The Third Circuit held that it lacked jurisdiction to hear the appeal because the District Court's Order did not resolve the Adversary Proceeding and thus was not a final (appealable) order pursuant to 28 U.S.C. §158(d). See In re Feldman, 685 Fed.Appx. 122 (3d Cir. Apr. 14, 2017) (not precedential).

The Adversary Proceeding was then remanded to this court for adjudication.

**Discovery History**

Discovery, and disputes about discovery, first began eight years ago in the State Court Action, which was commenced on June 27, 2011, by AAF in the Superior Court in New Jersey. Doc no. 27 at Ex.B at 5. Discovery in the State Court Action was initially to take course over "300 days and run from the first answer or 90 days from service on the first defendant, whichever [came] first." Id. The Defendant answered the State Court Complaint on August 18, 2011. On July 6, 2011, the Plaintiff filed a Request for Production of Documents; this request sought essentially the same discovery being pursued in this adversary proceeding. See Doc. no. 52 at Ex. 5. The Plaintiff filed a second request for these documents on November 21, 2011. Id. at Ex.9. Plaintiff's counsel sent follow-up letters regarding Defendant's failure to provide discovery on

---

[3] The District Court rejected all of the Appellant (Debtor)'s additional (and numerous) arguments.

August 25, 2011, December 30, 2011, and January 24, 2012, indicating that the requested

documents had not been provided. Id. at Exs. 5, 9. On September 20, 2011, Plaintiff's counsel

filed a Motion in state court to compel or to suppress Feldman's pleadings for failure to provide

discovery. Id. at Ex.6.  See also Id. at Ex.9. On May 21, 2012, counsel for Plaintiff sent

Defendant's counsel a letter detailing the discovery failures including the fact that "defendants

have yet to produce any bank records, ledgers or other documents to substantiate . . . the payment

of any of the fees that were the subject of the Assignment Agreement at issue here." Id. at Ex. 17

at 13.

      Defendant's evasion of discovery came along with him from state court to bankruptcy

court.

      Following the commencement of this adversary proceeding, and prior to the appellate

proceedings in District Court and the Third Circuit, on April 17, 2014, this Court issued a pretrial

order, which, *inter alia*, set June 26, 2014 - more than five years ago - as the discovery deadline.

On July 10, 2017 (following the appeal and remand described above), a second pretrial order was

issued, setting January 10, 2018, as the discovery deadline.  On May 1, 2018, after the parties'

Rule 26(f) conference (and after discovery was to have been completed), another pretrial order

was entered (pursuant to agreement of the parties), setting the discovery deadline of May 25,

2018.  The deadline to provide the necessary discovery continued to move.

      The parties' joint Report of Rule 26(f) Meeting, submitted on May 1, 2018, states that

> [t]he parties have agreed to specific document discovery exchanges. Plaintiff has
> provided specific discovery requests to the defendant, **the same requests made**
> **previously in the New Jersey proceeding** . . . Defendant has indicated that the
> information sought should be included in litigation files from defendant's lawsuit with
> another creditor [CFS] . . . Plaintiff also has requested bank records from August 2008,
> the time of defendant's receipt of the $1,150,000 payment [the First Award], through

February 2013. **Defendant has agreed to provide those records**.

Doc. no. 94 at 4 (emphasis added) (the "26(f) Report").

On May 30, 2018, the parties finally met to exchange discovery. Plaintiff produced a banker's box of documents. Defendant, however, produced *900* pages of non-responsive material which did not include the documents that Plaintiff specifically requested (such as the relevant bank records) or that the parties agreed to in the Rule 26(f) Report. See Doc. no.104 at 5-6. Defendant's counsel apologized and promised to provide the relevant discovery within a day or two.

This did not happen.

**Additional Motions to Dismiss and for Summary Judgment**

Shortly thereafter, in July 2018, this Adversary Proceeding was again thrown off course by the Defendant's filing of both a Motion to Dismiss pursuant to F.R.C.P. 17 (for failure to join or substitute a real party in interest) (doc. no. 102, the "MTD") as well as a Motion for Summary Judgment (doc. no. 103, the "MSJ"). The MTD alleged that Rapid Funds, a company which purchased AAF, is the real party in interest in this matter and that AAF lacks standing to pursue the litigation. The MSJ asserted that AAF was aware that CFS had a right to the proceeds that Plaintiff seeks to recover.

The parties exchanged responses and replies to these motions.

On December 24, 2018, the Court denied the MSJ, finding that the motion was premature in light of the fact that discovery was not complete and that it was the Defendant himself who had caused the discovery delay. See doc. no. 129.[4]

---

[4] With the denial of the MSJ, Feldman's Motion to Strike Plaintiff's Certifications Attached to the
(continued...)

**The Motion to Compel and Related Order**

Also in July 2018, the Plaintiff filed a Motion to Compel and for Protective Order (doc.

no. 104, the "Motion to Compel"). The Motion to Compel alleges that the Defendant continually

and willfully failed to produce discovery. As a sanction, the Plaintiff seeks judgment in its favor

with regard to this Adversary Proceeding. The Affidavit of AAF's counsel attached to the Motion

details Plaintiff's many thwarted efforts to obtain the requested discovery materials from

Feldman. For example, on July 31, 2017, Plaintiff's counsel (Tim Foley) sent Defendant's

counsel (Rich Meyers) an email stating, *inter alia*, "Attached are copies of the request for

production from the New Jersey Action. Our discovery request would be **those previously set**

**forth** (in the 2011 prior state court action). . .  We also will want to depose Mr. Feldman." Doc.

no. 104 at Ex.2 at 8 (emphasis added).  The requested discovery includes bank records from the

Defendant for the relevant time frame. Doc. no. 106, Ex. 1 at 3.

In response to the Motion to Compel, the Debtor asserted that "he ha[d] produced all the

relevant documents within his possession and control that relate to the items that Plaintiff has

requested." Doc. no. 112 at 1.

Following a hearing on the Motion to Compel and the MTD on October 23, 2018, the

Court directed the parties to confer and to file a status report on discovery no later than

November 2, 2018. Doc. no. 116.

This report was never filed.

Instead, on November 8, 2018, AAF reiterated its request that the Court grant its Motion

---

[4](...continued)

Plaintiff's Answer to Defendant's Motion for Summary Judgment became irrelevant. Doc. no. 113. The Court did
not rely on this material in denying the MSJ; the Motion was denied due to its own defects.

to Compel due to Feldman's extensive lack of cooperation. Doc. no. 120.

On December 24, 2018, the Court issued an Order granting the Motion to Compel (doc. no. 130, the "Motion to Compel Order"). The Motion to Compel Order noted that the Debtor had not provided "satisfactory explanation or excuse . . . as to why, in this over five year-old litigation, he has failed to meet specific discovery deadlines which were both agreed to between the parties and *court ordered* by way of the Pre-Trial Orders and court directive at the hearing on October 23, 2018." Doc. no. 130 at 7 (emphasis in original). The Court admonished the Defendant that "no further delay and distraction" would be tolerated and specifically ordered the Debtor to provide the following discovery to the Plaintiff by January 7, 2019:

- Defendant's bank records for the period June 2009 through November 2011.

- The files for the underlying IPOD Nano and Vioxx litigations.

- Documents identifying referral or association agreements with other attorneys and/or law firms arising out of or relating to the IPOD Nano and Vioxx litigations.

- Communications with third parties relating to payments of attorney's fees arising out of or relating to the IPOD Nano and Vioxx litigations.

Id. at 7-8 (the "Ordered Discovery").

At a hearing on January 9, 2019 (and after the Ordered Discovery was to have been produced by the Defendant), the MTD was denied. Doc. no. 133. At the hearing regarding the MTD, the Defendant handed the Plaintiff a flash drive which purportedly contained relevant discovery (the "Flash Drive"). Shortly thereafter, Defendant's attorney, Alan D. Budman,

withdrew from this matter. Doc. no. 135. Richard Meyers now represents the Defendant.[5]

**The Hearing on the Motion to Compel Order**

The Motion to Compel Order set a hearing to consider appropriate sanctions to be imposed against the Defendant pursuant to F.R.C.P. 37 for February 12, 2019 (the "Sanctions Hearing"). By agreement, the Sanctions Hearing was postponed to March 12, 2019.

At the Sanctions Hearing, the Plaintiff asserted that:

- The Flash Drive contained "2,276 pages of worthless paper" that were not in any way responsive. Tr. at 3-4.

- Feldman has not, contrary to his contention, produced all relevant iPod Nano and Vioxx litigation files. Tr. at 8.

- AAF needs to determine what the Defendant received, when he received it, and what he did with it; that's why the Plaintiff needs bank records. Tr. at 13, 90.

- Feldman has a long history of ignoring and or disobeying discovery orders. Tr. at 18-19. Plaintiff's counsel has been forced to review thousands and thousands of pages of noncompliant documents. Tr. at 19-21, 26.

The Defendant argued:

- He complied with "three out of four issues" and provided complete files regarding iPod Nano and Vioxx litigation. Tr. at 5, 14. The bank records were not produced because the Defendant does not have them, <u>Id</u>. at 5-6, 15, and because they are not relevant. Tr. at 44-45.

---

[5] The Defendant has had several attorneys during the course of the dispute and, at times, has represented himself.

- The requested information regarding money received by Feldman is available to the Plaintiff because Feldman referred his Vioxx cases to other lawyers and those firms reported the amounts in escrow. Tr. at 10-11, 14, 43, 61-3.

- The requested information regarding relevant Vioxx and iPod Nano settlement amounts that Feldman received is contained in the CFS litigation files, which were produced.  Tr. at 11, 29, 43-44, 47.

- Feldman did not receive any additional Vioxx payments for referrals, except possibly a payment in 2010. Tr. at 82-4.

- The requested information is irrelevant because CFS has a first lien position and, therefore, Feldman is not liable pursuant to 11 U.S.C. §523(a)(6). Tr. at 35-6, 76.

Following the Sanctions Hearing, the parties submitted briefs.[6]

## IV.  STANDARD REGARDING IMPOSING SANCTIONS FOR DISCOVERY VIOLATIONS

### A. General Principles

The purpose of discovery is to "uncover facts about the claims and defenses set forth in the pleadings . . ." In re Gerber Probiotic Sales Practices Litig., 306 F.R.D. 527, 528 (D.N.J. 2015) (citations omitted). See also In re Cary, 167 B.R. 163, 166 (Bankr. W.D. Miss. 1994) (citing U.S. v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958) (additional citations omitted)) ("Discovery rules are to be broadly and liberally construed in order to fulfill discovery's purpose of providing both parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement.") (additional citations omitted).

---

[6] The Defendant submitted two post hearing pleadings, despite having been granted leave to file one pleading. One of the Defendant's submissions is styled as a letter to the court; the parties were previously admonished that "letters are not the proper manner in which to communicate with or seek relief from the court." Doc. no. 130 at 4, n.4.

When discovery orders and agreements are violated, Federal Rule of Civil Procedure 37 allows for a broad range of sanctions against counsel and parties. Where the "discovery violation involves a failure to obey a court order compelling discovery" the court may use "'as many and as varied sanctions as are necessary to hold the scales of justice,' including the most severe sanction of dismissal." In re Tutu Wells Contamination Litig., 162 F.R.D. 46, 63 (D.V.I. 1995).

The relevant portion of Rule 37 specifies that if a party fails to obey an order to provide or permit discovery, the court may issue an order that may include:

(I) directing that the matters embraced in the order or other designated facts be taken as established for purpose of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

F.R.C.P. 37(b)(2).

Rule 37 is written "in mandatory terms, and 'is designed to provide a strong inducement for disclosure of Rule 26(a) material.'" Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995) (quoting Harlow v. Eli Lilly & Co., 1995 WL 319728 at *2 (N.D. Ill. May 25, 1995)).

-12-

A court has "broad discretion" in all discovery matters. <u>United States v. Washington</u>, 869

F.3d 193, 220 (3d Cir. 2017); <u>see also</u> <u>Kelly v. Syria Shell Petroleum Dev. B.V.</u>, 213 F.3d 841 (5th

Cir. 2000); <u>Newman</u>, 60 F.3d at 156 (3d Cir. 1995) (noting that district courts have discretion

with regard to Rule 37).

## B. <u>Poulis</u>

In the seminal case of <u>Poulis v. State Farm Fire and Cas. Co.</u>, 747 F.2d 863 (3d Cir.

1984), the Third Circuit upheld the district court's *sua sponte* dismissal of the Plaintiff's

complaint (for insurance recovery) with prejudice because counsel failed to meet specified

discovery deadlines.

The Court of Appeals delineated six factors a court must consider prior to dismissing or

refusing to lift a default following a violation of discovery orders. The Court stated that the factors

"should be weighed . . . in order to assure that the 'extreme' sanction of dismissal or default is

reserved for the instances in which it is justly merited. In this case, although there was no

contumacious behavior, the pattern of dilatory behavior is compounded by the plaintiffs' failure to

file any answers to interrogatories . . . and there is a prima facie defense to the claim." <u>Poulis</u>, 747

F.2d at 870.

The six <u>Poulis</u> factors are:

1) the extent of the party's personal responsibility;

2) the prejudice to the adversary caused by the failure to meet scheduling orders

and respond to discovery;

3) a history of dilatoriness;

4) whether the conduct of the party or the attorney was willful or in bad faith;

5) the effectiveness of sanctions other than dismissal, which entails an analysis of

alternative sanction; and

> 6) the meritoriousness of the claim or defense.

Poulis, 747 F.2d at 868-70 (3d Cir. 1984).

"[N]o single *Poulis* factor is dispositive." Ware v. Rodale Press, Inc., 322 F.3d 218, 222

(3d Cir. 2003).

However, a court must consider that exclusion of evidence is an "extreme sanction."

Ware, 322 F.3d at 221.  A "trial court's decision to do so will not be disturbed on appeal absent a

clear abuse of discretion." Id. (citation omitted).  See also Scarborough v. Eubanks, 747 F.2d 871,

875-78 (3d Cir. 1984).  A sanction must be "just" and "specifically related to the particular

claim." In re Berks Behavioral Health, LLC, 511 B.R. 55, 60 (Bankr. E.D. Pa. 2014) (citation

omitted).

The Third Circuit affirmed the entry of judgment as a discovery sanction in Curtis T.

Bedwell and Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683 (3d Cir. 1988).  Such discovery

sanctions must be available as a penalty as well as a deterrent. 843 F.2d at 691 (citing National

Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 642-43 (1976)).  Bedwell analyzed

the six Poulis factors and noted, *inter alia*, that the discovery improvements by the dilatory party

were "too little, too late." 843 F.2d at 695.

Similarly, Joselson v. Lockhart-Bright Assoc., 95 F.R.D. 160 (E.D. Pa. 1982) noted that "a

default judgment is warranted where the offending party has completely failed to comply with the

Court's orders." Id. at 162 (citations omitted).  See also Southern New England Telephone Co. v.

Global NAPs, Inc., 624 F.3d 123, 140 (2nd Cir. 2010) (upholding entry of default judgment where

four-part Second Circuit test met and party's dilatoriness was evidenced by its failure "over the

course of *two years* to produce its financial records and otherwise to comply meaningfully with

-14-

the district court's disclosure order. For several months [defendant] claimed that the relevant

records were not in its custody.") (emphasis in original).

## V. DISCUSSION

### A. Analysis of the Six Poulis Factors

Analysis of the Poulis factors shows that default judgment in favor of the Plaintiff is

warranted as a sanction under the extreme facts and circumstances presented here.

### 1. The Extent of the Party's Personal Responsibility

In this saga of a proceeding, Feldman has been represented by several lawyers and has

sometimes appeared *pro se*. The Court is mindful that "a pro se plaintiff is responsible for his

failure to attend a pretrial conference or otherwise comply with a court's orders." Briscoe v.

Klaus, 538 F.3d 252, 258 (3d Cir. 2008).

Although the circumstances regarding Defendant's representation have changed, the pattern

of discovery abuse - ignoring or confounding court ordered and agreed upon discovery - remains

constant. Further, the Court considers the fact that the Defendant is himself an attorney who has a

good deal of litigation experience as weighing against Feldman, *i.e.* the Defendant knows the

process and purpose of discovery and yet has affirmatively chosen not to comply. See Tr. at 52.

Factor one weighs in favor of default judgment.

### 2) The Prejudice to the Adversary Caused by the Failure to Meet Scheduling Orders and Respond to Discovery

"The burden imposed by impeding a party's ability to prepare effectively a full and

complete trial strategy is sufficiently prejudicial" to satisfy the second Poulis factor. Ware, 322

F.3d at 222.  See also Hildebrand v. Alleghany County, 923 F.3d 128, 134 (3d Cir. 2019).

The Plaintiff has been pursuing the same discovery from the Defendant for *eight years*.

AAF's efforts include sorting through thousands of pages of irrelevant information, contacting and

following up with opposing counsel countless times, filing multiple motions to suppress, filing a

motion to compel, appearing at many hearings regarding discovery, and filing supporting briefs.

AAF's has not been able to review and prove the merits of its claims; due to Defendant's

noncompliance, the Plaintiff has been forced to focus on obtaining necessary information.  Quite

simply, AAF cannot prosecute its cause of action without the requested discovery.

Factor two weighs in favor of default judgment.

**3) A History of Dilatoriness; and 4) Whether the Conduct of the Party or the Attorney
was Willful or in Bad Faith**

Poulis factors three and four will be analyzed together.

Because the history of dilatoriness in this matter is extreme, the Court concludes that the

Defendant and his counsel have acted in bad faith.

As discussed, this history dates back to the State Court Action is which the Defendant was

sanctioned for failing to provide discovery.   Relatively early on in this adversary, Judge Raslavich

described the Debtor's already lengthy history of abuse:

> . . . the Debtor's discovery violations were neither limited to one instance, nor explained or
> excused. The record reflects that for at least ten months, the Defendant refused to respond
> to legitimate discovery requests . . .  at no time after filing of the January 2012 motion [to
> suppress in State Court] did the Defendant fully respond to discovery. . . The record
> similarly reflects that the Defendant failed to provide agreed upon documentation in
> mediation . . . In short, this is not at all a case of a single violation over a short period of
> time. Rather, the **state court record demonstrates multiple refusals to comply with
> discovery requests over many months . . . ....** the instant Debtor had the opportunity to
> litigate the merits of the Plaintiff's claim but **chose instead to frustrate attempts to**

**develop the record.** The excuses he now offers for not complying with discovery; to wit, other personal and health reasons, were only first raised well *after* the fact. **The Court finds the belated offering of these explanations to be a not so subtle post hoc stratagem.**

In re Feldman, 514 B.R. 117, 123–25 (Bankr. E.D. Pa. 2014), *vacated on other grounds sub nom.*

Feldman v. Am. Asset Fin., LLC, 534 B.R. 627 (E.D. Pa. 2015) (bolded emphasis added).

Five years after Judge Raslavich's opinion (and eight years after the State Court Action began) Feldman has failed to produce **the same discovery**.[7]

"Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or constant tardiness in complying with orders." Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund, 29 F.3d 863, 874 (3d Cir. 1994) (citing Poulis, 747 F.2d at 868) (additional citation omitted). "[A] party's problematic acts must be evaluated in light of its behavior over the life of the case." Adams, 29 F.3d at 875 (citation omitted). Dilatoriness almost always involves repeated delay. Hildebrand v. Alleghany County, 923 F.3d 128, 135 (3d Cir. 2019) (citing Ware, 322 F.3d at 224)).

"The practices of [a party] exemplify flagrant bad faith when after being expressly directed to perform an act by a date certain . . . they failed to perform and compounded that noncompliance by waiting until five days afterwards before they filed any motions." National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 640 (1976). "Withholding documents because you do not want to disclose them is textbook bad faith." Cox v. United Parcel Service, Inc., 753 Fed.

---

[7] Although the parties disagree about whether the underlying Vioxx and iPod Nano litigation materials have been produced, the Defendant admits that he still has not produced his bank records for the relevant time period. The bank records, which presumably would show amounts Feldman received and paid out, are a central piece of information in this matter in which the Plaintiff seeks to show that the Debtor willfully and maliciously converted its money. We can thus conclude that the Ordered Discovery has not been provided.

The Defendant has obfuscated this issue by piling on irrelevant material, making numerous tangential arguments, and engaging in extensive delay.

Appx. 103, 106 (3d Cir. Oct. 10, 2018) (not precedential). "Time limits imposed by the rules and

the court serve an important purpose . . . [i]f compliance is not feasible, a timely request for an

extension should be made to the court. A history of ignoring these time limits is intolerable."

Poulis, 747 F.2d at 868.

Feldman has not requested an extension for any of the multiple discovery orders. The Court

calculates that, since coming to this court, the Defendant has ignored or defied at least seven

agreed or court issued discovery orders.[8] This does not include the private communications by the

Plaintiff which the Defendant also ignored (nor does it include the Defendant's dilatory history of

ignoring orders in the State Court).

This history of the Defendant's conduct is egregious and shocking. Although discovery has

been ordered numerous times by two courts and three judges, Feldman has alluded completing

discovery since 2011-- **eight years**. This dilatoriness is the most appalling discovery abuse that the

Court has witnessed in more than 13 years on the bench.  The abuse evidences bad faith.

Factors three and four weigh heavily in favor of default judgment.

---

[8] See:
- April 17, 2014 Pretrial Order setting discovery deadline of June 26, 2014;
- July 10, 2017 Pretrial Order setting discovery deadline of January 10, 2018;
- May 1, 2018 Pretrial Order setting discovery deadline of May 25, 2018;
- May 1, 2018 Joint Rule 26(f) Report of the parties in which the Defendant agreed to provide the discovery that was initially requested in the State Court Action (including the bank records);
- May 30, 2018 agreement by the Defendant's counsel that he would provide the relevant discovery in a day or two;
- October 23, 2018 direction by the Court that the parties submit a discovery status report by November 2, 2018;
- December 24, 2018 Order directing that specific discovery be provided by January 7, 2019, setting a hearing to impose sanctions, and "admonishing the Defendant that further delay and distraction in this very old adversary proceeding will not be tolerated." Doc. no. 130 at 7.

**5) The Effectiveness of Sanctions Other than Dismissal**

Dismissal or default judgment is an extreme sanction which should be a "last, not first, resort." Poulis, 747 F.2d at 869.  See also Nat'l Hockey League v. Metro Hockey Club, Inc., 427 U.S. 639 (1976); Briscoe v. Klaus, 538 F.3d 252, 258 (3d Cir. 2008); Hildebrand v. Alleghany County, 923 F.3d 128, 132 (3d Cir. 2019) ("Without a doubt, cases should be decided on the merits barring substantial circumstances in support of the contrary outcome."). Alternative sanctions "are particularly appropriate where the plaintiff has not personally contributed to the delinquency." Poulis 744 F.2d at 866.

The extreme sanction of default judgment against Feldman is appropriate here because, given the Defendant's history of flouting court orders, there is no indication that a lesser sanction will have an impact.  As discussed, the Defendant, both on his own and with the assistance of various counsel, has managed to dodge providing complete and adequate discovery to the Plaintiff for nearly a decade. The Court has no confidence that a less severe sanction, such as a monetary penalty or the exclusion of certain pleadings and documents, would either motivate the Defendant to comply or have a deterrent effect on future such actions. A lesser sanction would only open the door to further abuse by the Defendant.

Factor five weighs in favor of default judgment.

**6) The Meritoriousness of the Claim or Defense.**

"A claim . . .  will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff. . . ." Poulis, 747 F.2d at 869-70. When both sides can make out a *prima facie* case, this factor may be neutral.  Curtis T. Bedwell and Sons, 843 F.2d at 696 (3d Cir. 1988). The standard with regard to this determination "is moderate."

Adams, 29 F.3d at 876.

The Amended Complaint makes out a *prima facie* case for nondischargeability pursuant to

11 U.S.C. §523(a)(2)(A) and §523(a)(6).

Section 523(a)(2)(A) of the Code excepts from discharge debts that are obtained by "false

pretenses, a false representation, or actual fraud . . . ." The elements required to demonstrate a

cause of action pursuant to 11 U.S.C. §523(a)(2)(A) are:

> 1. The debtor made a material representation of fact that he or she knew at the time was
> false or contrary to his or her true intentions;

> 2. The debtor made the representation with the intention and purpose of deceiving the
> creditor;

> 3. The creditor justifiably relied on such representation; and

> 4. The creditor suffered a loss or damages as a proximate cause of the false representation
> or act.

In re Giquinto, 388 B.R. 152, 165 (E.D. Pa. 2008); see also In re Ritter, 404 B.R. 811, 822 (Bankr.

E.D. Pa. 2009); In re Vepuri, 2009 WL 2921305, at *10 (Bankr. E.D. Pa. Mar. 25, 2009).

The Amended Complaint alleges that the Debtor induced AAF to enter the 2009 Agreement

by making false and material representations and that the Debtor had no intention of paying the

amounts he owed pursuant to the Agreement. The Plaintiff alleges that it was damaged by this loss

of a promised return. If these facts were established at trial, the Plaintiff would be entitled to a

recovery.

Likewise, AAF states a cause of action in the Amended Complaint pursuant to 11 U.S.C.

§523(a)(6).  This provision states that a discharge does not apply to a debt "for willful and

malicious injury by the debtor. . . ." A *prima facie* cause of action pursuant to 11 U.S.C. §523(a)(6)

requires that the plaintiff allege that the debt arose from an injury to the plaintiff that was:

> 1. Willful (involving deliberate and intentional conduct);

> 2. Intended or substantially certain to cause injury; and

> 3. Malicious (i.e. wrongful).

In re Kates, 485 B.R. 86, 101 (Bankr. E.D. Pa. 2012); see also In re Gotwald, 488 B.R. 854 (Bankr.

E.D. Pa. 2013).

The Plaintiff makes out a *prima facie* claim pursuant to section 523(a)(6) by alleging that

the Debtor converted its funds, which was an intentional act, known to cause harm. See In re Luby,

438 B.R. 817, 837 (Bankr. E.D. Pa. 2010).  If these allegations were proven at trial, the Plaintiff

would be entitled to a determination of nondischargeability. Thus, the Amended Complaint is a

viable claim.[9]

Factor six weighs in favor of default judgment.

## Summation of the Poulis Factors

"While no single Poulis factor is dispositive . . . not all of the Poulis factors need be

satisfied. . . ." in order to impose a harsh sanction. Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir.

---

[9] For a more fulsome explanation of the adequacy of the Amended Complaint, see Opinion denying the
Debtor's Motion to Dismiss. Doc. no. 33. This Opinion was not appealed.

2008) (citations and internal quotations omitted).  See also Dickens v. Danberg, 700 Fed.Appx.

116 (3d Cir. June 28, 2017) (not precedential).

Although extreme, dismissal and default "must be available to the ... court [as a sanction] in

appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a

sanction, but to deter those who might be tempted to such conduct in the absence of such a

deterrent." In re Theokary, 468 B.R. 729, 749 (Bankr. E.D. Pa. 2012), aff'd sub nom. Theokary v.

Shay, 2013 WL 5823849 (E.D. Pa. Oct. 29, 2013), aff'd sub nom. In re Theokary, 592 Fed. App'x

102 (3d Cir. Feb. 5, 2015) (quotation marks and citation omitted).

Weighing of the Poulis factors requires an overall analysis of the facts and circumstances.

The Court is well aware that a default judgment is a drastic sanction, yet the balance of factors and

the history and circumstances of this case point decidedly to imposition of such penalty.

Default judgment will be granted to the Defendant in the amount of $484,433.76.[10]

### B. Defendant's Arguments

The Debtor makes a number of arguments regarding why any sanction imposed should be

lenient. Some of these arguments appear contradictory.[11]  None is persuasive.

The Debtor's assertions may be summarized as follows:

- He complied with most of the discovery orders.

- He cannot fully comply with the discovery demands.

---

[10] This is the amount sought in the Amended Complaint.

[11] For example, Feldman argues that the information is not available and that he chose not to produce it.
His attorney has apologized for his behavior in this matter, see Tr. at 67, and yet asserts that all behavior on the part
of the Defense was justified.

- The requested discovery is not relevant.

- The information is otherwise available.

- Any delay is justified due to the fact that the 26(f) Report was entered inadvertently or due to the timing of the Motion to Compel and Motion to Dismiss and related proceedings.

Feldman's arguments amount either to an assertion that he should not have to comply or an explanation, rather than an excuse, for why he did not comply. The Debtor fails to address the central <u>Poulis</u> analysis outlined above, namely that his long history of discovery violations were willful and that this dilatoriness made the Plaintiff's pursuit of this litigation impossible.

The Court will highlight two of Feldman's arguments.

First, the Defendant's repeated assertion that the information sought in discovery is irrelevant and therefore unnecessary is misguided, at best. Feldman argues that "[t]here is no further discovery needed . . . the existence of the CFS forbearance agreement shows that AAF, a junior lien creditor, was not the owner of the property that Defendant allegedly converted." Doc. no. 152 at 5. <u>See also</u> Tr. at 14 ("You don't need bank records to see what he got."); Tr. at 35 ("he ended up paying [CFS] instead of AAF. He really doesn't have much of a choice about that."). The crux of this position is that because the underlying lawsuit against the Defendant has no merit - because CFS has a first lien position on any funds claimed by the Plaintiff - that there is no reason to bother with discovery.

This is not a winning argument.

In order effectively to assert a defense that a party is unable to comply with discovery, the litigant must "go beyond a mere assertion of inability and satisfy his burden of production on the

-23-

point by introducing evidence in support of its claim." In re Chase & Sanborn Corp, 872 F.2d 397,

400 (11th Cir. 1989) (emphasis added and citation omitted).  See also Hildebrand, 923 F.3d at 135

(3d Cir. 2019) (examples of bad faith include failure to answer interrogatories for a year and a half,

ignoring admonitions by the court, and making false promises to correct delays).  As the Court

explained to the Defendant's counsel at the March 12th hearing, the proper time to protest the

relevance of discovery requests has passed.

Second, Feldman argues that his refusal to provide discovery was justified;[12] "[t]he Rule

7017 proceedings . . .  justified Debtor's counsel suspending the ongoing Rule 26 document

exchanges . . . defense counsel had an interest in limiting discovery of sensitive information to the

party who had standing." Doc. 152 at 5. See also Doc. 151 at 4 (noting that Debtor's counsel

withheld information because "the discovery materials involved attorney-client agreements and

other confidential materials."); Tr. at 52 ("when [I] learned Counsel would not turn over the

business agreement to me, I did not provide them any further discovery"); Tr. at 70 ("I did play tit

for tat").  The Defendant insists that because he had good reason, taking unilateral steps to flout

court orders[13] was warranted. Defendant cites no authority to support this proposition and the Court

will not sanction such behavior.  See Cox v. United Parcel Service, 2017 WL 3189022, at *6-7

(M.D. Pa. July 26, 2017), aff'd 753 Fed. Appx. 103 (3d Cir. Oct. 10, 2018) (not precedential)

(noting that Plaintiff's excuse of computer delay was not adequate where he knew full well of

discovery deadlines and stating that the Plaintiff has "willfully failed to comply with ... court

---

[12] This argument, like many the Debtor makes, is a variation on the previous one, *i.e.* that the discovery was not necessary and therefore could be ignored.

[13] Feldman asserts that he withheld information to AAF because the Plaintiff lacked standing to pursue this matter. The Court, upon consideration, rejected this argument at the hearing to consider the MTD.

orders, and to comply with outstanding discovery requests, and failed to advance plausible reasons for the failure.") (citations omitted). So too here.

In the end, Defendant's late breaking arguments - that he almost but did not quite comply, that the notice of certain orders was not timely received, that the standing issue became prevalent, or that the whole dilemma was solely the fault of the most recent attorney on the case - simply make no sense in light of the fact that Feldman has failed to provide this very discovery to the Plaintiff for the better part of a decade.

Feldman's arguments fail to change any aspect of the Poulis analysis or the Court's conclusion that default judgment is the appropriate sanction.

## VI.   CONCLUSION

There is no place in modern litigation practice for "trial by ordeal."  In re Tutu Wells Contamination Litig., 162 F.R.D. 46, 79 (D.V.I. 1995). This battle royale between Feldman and AAF has been nothing if not an ordeal. Upon consideration of the lengthy record and for the reasons stated above, the Court concludes that this ordeal was caused, in large part, by the Defendant's willful refusal to comply with discovery orders and agreements.

Default judgment in favor of AAF will be entered.

Date: September 25, 2019.

_____
JEAN K. FITZSIMON
United States Bankruptcy Judge

-25-